JAMES L. MOORING v. W. G. LITTLE, N. L. LITTLE and HARRY SKINNER.

*Fraud—Evidence—Estoppel.*

L, being indebted to M by bond, executed a mortgage, conveying certain lands as security. The bond was assigned to S, who controlled judgments against L, having lien subsequent to the mortgage. The lands were advertised to be sold under the mortgage, when L applied for an extension of time, which S refused, unless a portion of the mortgage debt was paid and the judgments under his control secured; and he thereupon proposed that the sale should proceed, L's wife should become the purchaser and give a mortgage to secure the balance of the purchase money and the said judgments, suggesting that thereby the land would be relieved from subsequent judgments and placed beyond the reach of L's creditors. This arrangement was carried out, and under the last mortgage the land was sold, when the plaintiff became a purchaser with knowledge of the facts. The sales were fairly made in the ordinary method, and the price was a fair one; *Held:*

1. That while these facts might, in connection with others, be evidence of fraud, they are not fraudulent *per se,* nor do they raise a presumption of fraud.

2. That it would have been otherwise had the arrangement been made with the debtor—the husband—for the purpose of hindering and delaying his creditors and the wife's name had been used to that end.

3. That in an action by the purchaser against L and wife to recover possession of the land, they were estopped by their deeds from denying his title.

4. *It seems,* that a purchaser under a junior judgment, who acquired his title after the action against L and wife was begun, will not be allowed to make himself a party defendant and assert his title in that cause.

This is a CIVIL ACTION, which was tried upon exceptions to referee's report, before *Connor, Judge,* at September Term, 1885, of PITT Superior Court.

The action was brought by the ancestor of the present plaintiff, to the Spring Term, 1879, of the Superior Court of the county of Pitt, against the defendants, the Littles—husband and wife—to recover the land described in the complaint. At the return term of the Court they filed their answer, denying the allegations of the complaint, except that they admitted themselves to be in possession of the land.

At the same term the defendant Skinner, by leave of the Court, became a party defendant, and filed an answer to the complaint, denying that the plaintiff was the owner of the land, and alleging that he was the owner and in possession thereof, and that the other defendants named were his tenants.

Afterwards, the defendant Skinner, at Spring Term, 1880, of the Court, filed an amended answer, alleging that the deeds of conveyance under which the plaintiff claimed title were fraudulent and void, to which the plaintiff filed a reply. The defendants, the Littles, adopted the amended answer of their co-defendant. The pleadings raised issues of fact and law.

Afterwards, at Spring Term, 1882, the Court entered this order: "It is, by consent, ordered that this cause be referred to Charles F. Warren, Esq., who shall try all questions and issues of law and facts, and his findings of the facts shall have the effect of a special verdict."

The referee made a report, whereof the following is a copy:

"1. On the 4th day of January, 1876, W. G. Little, being

indebted to James L. Mooring, executed to him his bond for $1,057.60, payable January 1st, 1877, with eight per cent. interest from date. To secure the payment of the bond, Little and his wife, Nicy, executed a mortgage upon the land in controversy, with the usual thirty days' power of sale in case of default. The mortgage was duly recorded. The mortgage bond was assigned before maturity, and for value, by Mooring to I. A. Sugg and William Whitehead. After the maturity of the bond, the assignees, in the name of the mortgagee Mooring, and by direction, advertised the land for sale on the 3d day of February, 1877. The land was sold on that day, and Nicy Little was declared the purchaser, at $1,155.

" 2. At the date of the sale, and for some-time prior thereto, the defendant W. G. Little, was largely indebted, and was insolvent. That the homestead of W. G. Little has been allotted to him in lands not included in the mortgage.

" 3. After the land was advertised, and before the defendant Little applied to Sugg for an extension of time, which Sugg refused to grant, unless Little should pay him on the bond $500, and either pay him a bonus for the indulgence, or secure six judgments, docketed in Pitt Superior Court, amounting to $366, on February 20th, 1877. The said judgments are specified in the testimony of I. A. Sugg. They were all docketed subsequent to the registration of the mortgage to James L. Mooring, and prior to the judgment of Vaughn, Barnes & Co. and Lewis Webb, under which the defendant Skinner claims title. All of said judgments were prior liens to those under which Skinner purchased.

" 4. It was thereupon suggested by Sugg that the better course would be to sell the land and let Mrs. Little buy, and secure the unpaid part of the mortgage and judgments held by him. Sugg stated to Little that by pursuing this course it would rid the land of subsequent judgments, and place it

beyond the reach of his creditors. Little consented to the arrangement with this object in view. James L. Mooring knew the agreement between Sugg and W. G. Little before the sale of February 3d, 1877.

"5. Nicy L. Little had no separate estate, and paid no money or other thing of value for the conveyance of said land.

"6. That upon the 20th day of February, 1879, a deed was executed by James L. Mooring, read to the said Nicy, and delivered to her by the grantor. That at the same time and place Nicy Little and her husband executed two mortgages, one to I. A. Sugg, to secure two notes of $601.20 and $386.00, and payable December 1st, 1877, and December 1st, 1878, with eight per cent. interest from date, and one to James L. Mooring for $400.00, payable January 1st, 1878, with eight per cent. interest from date, both mortgages being upon said land.

"7. That upon the 20th day of February, 1877, W. G. Little, in pursuance of the agreement previously had with Sugg, paid $100.00 upon the original mortgage debt, and James L. Mooring paid for the said Little $400.00, making the sum $500.00, required by Sugg as a payment on his debt.

"8. That the $601.00 note, the balance due upon the mortgage debt, after crediting the $500.00 payment, and the $386.00 note was the amount of the six judgments controlled by Sugg, with $20.00 added therein as a fee. The consideration of the $400.00 note to Mooring was the money advanced by him for Little, and paid to Sugg. By agreement between Mooring and Sugg, the mortgage to Sugg was registered first. This agreement was made the day of the execution of the mortgage.

"17. On January 4th, 1879, a *fi. fa.* issuing upon the Vaughn, Barnes & Co. judgment was levied upon said lands, and upon the 24th day of July, 1879, a *ven. ex.* upon the same judgment was received by the sheriff. On the 15th

day of September, 1879, the land in controversy was sold thereunder, and upon execution issuing upon the Lewis Webb judgment, and purchased by Harry Skinner for $176.08.

" *Conclusion of Law.*—Upon this state of facts, the referee is of the opinion :

" 1. That the sale of February 3d, 1877, under the mortgage to James L. Mooring, of January 4th, 1876, was fraudulent as to creditors, and void.

" 2. That the $400.00 paid by James L. Mooring to I. A. Sugg, at the instance of W. G. Little, was a payment upon the mortgage debt of $1,057.60 ; that it was not equivalent to splitting that debt, and the $400.00 note taken therefor did not attach to the mortgage of January 4th, 1876, or its security.

" 3. That plaintiffs are not entitled as to the balance of the $1,057.60 after applying the payment of $100.00, and $183.54 made by Little, and $400.00 made by Mooring for Little, to be remitted to the security of the mortgage of January 4th, 1876; that the said mortgage having been cancelled of record, and the bond secured surrendered and destroyed in pursuance of a fraudulent agreement, plaintiff has no equity to demand that the satisfaction be stricken out.

" 4 This is also true as to the satisfaction of the Sugg judgment.

" 5. That the deed from Allen Warren, sheriff, to Harry Skinner, executed September 15th, 1879, related back to the date of the docketing of the Vaughn, Barnes & Co. judgment, January 25th, 1876, and of the Lewis Webb judgment, March 13th, 1876.

" 6. That Harry Skinner is the owner of the land."

From the judgment confirming the report the alpintiff appealed.

*Mr. W. B. Rodman, Jr.,* for the plaintiff.
*Mr. Ernest Haywood,* for the defendants.

MERRIMON, J., (after stating the case). By consent of the parties, the findings of fact by the referee have the effect of a special verdict, and must be so treated. It is not found that the sale of the land in controversy under the first mortgage mentioned in the pleadings and the report of the referee, or any transaction in connection therewith or growing out of the same, was fraudulent in fact.

The referee found as a conclusion of law arising upon the facts, that the sale first mentioned was fraudulent and void, and upon exception thereto, the Court sustained this principal finding. So that the main question before us is as to the correctness of this decision.

We cannot concur in the view the Court took of the law arising upon the facts found. In our judgment, they do not of themselves necessarily imply fraud, nor do they raise a presumption of fraud that may be rebutted, nor does the law draw the conclusion that the debts secured by the mortgages and the sales of the land under and in pursuance of them were fraudulent and void.

The debt secured by the first mortgage, the mortgage itself, the assignment thereof to the persons named, and the right of the latter, in the exercise of the power of sale contained in it, to advertise and sell the land embraced by it—that in controversy—are not questioned in any respect. The assignees of the mortgage did advertise and sell. The sale, so far as appears, was duly advertised; it was fairly open to all persons who, for any reason desired to do so, to bid for or purchase the land. There was neither shift, nor subterfuge, nor device to prevent the creditors of the mortgagee or others from doing so. They had fair opportunity to make the purchaser, whoever he might be, pay the full value of the land—

indeed, it seems it was sold for nearly, if not quite, its reasonable value.

The mortgagor, Little, though largely in debt and insolvent, had the right in good faith to ask the owner of the mortgage, Sugg, to delay the sale for a reasonable period; and the latter had the right, in good faith, to grant such indulgence, and also to require the payment of a part of the mortgage debt and, as well, security for the docketed judgments he controlled as counsel. That Sugg, under the circumstances, suggested to Little that it would be wiser to sell the land—not covertly—but at open, fair sale—at such fair sale as was made, so far as appears, let the latter's wife buy it and secure the debts due Sugg and the docketed judgments of his clients by a fresh mortgage of the land, was not of itself dishonest; and if the suggestion was acted upon in good faith, this was not dishonest or fraudulent. Such fair sale to the wife of Little did not—certainly of itself—deprive the creditors of Little of any right or remedy they had, or might justly have, against him in respect to the land. They had fair oportunity to make the land pay the debts of Sugg and his clients, (these were prior liens,) and their own, if the lands were, in their judgment, worth so much. The wife of Little had the right to buy the land, although she had no property, if Sugg were willing to take her note, secured by a mortgage of the land, in payment and discharge of his debt; and although she was not present at the sale, and did not direct that the land be purchased for her, yet, if she afterwards ratified the bid for her, took a deed for the land, executed her note for the purchase money and a mortgage of the land to secure it, as she did, this rendered the sale to her effectual. Nor did the fact that Mooring supplied four hundred dollars of the money, which Sugg required to be presently paid, and took the note of the wife of Little and a second mortgage of the land to secure it, necessarily render the transaction fraudulent as to creditors of Little, the hus-

band.   These facts might be evidence of a fraudulent purpose, but of themselves they do not constitute fraud—they
may well consist with honesty and fair dealing; their weight,
as such evidence, would be greatly impaired by the fact that
the sale of the land at which the wife purchased was fair,
and the two debts—not questioned—secured by the two
mortgages of the land by her, amounted to more than thirteen hundred dollars, a sum not much short of the reasonable value of the land, at the time she purchased it.

Much stress is laid on the suggestion of Sugg to Little, the
husband debtor, that it would be wise to let the land be sold
and his wife buy it, as indicated—that to do so, " would rid
the land of subsequent judgments and put it beyond the
reach of his creditors."   While this suggestion, in connection with other facts, might be some evidence of a fraudulet purpose, it might, in view of the circumstances, be perfectly consistent with an honest purpose.   It might be said,
not unfairly, that he meant no more than that the land was
not worth more than the debts he controlled, that constituted
prior liens upon it; that it would be expedient to let it go to
sale, the wife of the debtor buy it, and he would take her
note secured by a mortgage of the land for the purchase
money, and thus put it beyond the reach of creditors of the
husband; that, however, he did not mean that this should
be done covertly and fraudulently, but openly and fairly.
The sale, as made, so far as appears, did not contravene this
view—it appears that it was fair and open to every person.
If the suggestion was intended as a contrivance to enable
the husband debtor himself to pay the debts so due to and
controlled by Sugg, and have the title pass to the wife, and
thus shield the land from his creditors, then it was not
honest; and if the sale and conveyances to and from the wife
were in execution of such purpose, then they and the whole
transaction were fraudulent and void as to creditors, because
the purpose was to prevent, hinder and delay the creditors

of the debtor, Little, from reaching and subjecting to the payment of their debts such of his property as ought justly to be applied to the payment of the same, and Sugg would be affected, because he was a party to the fraudulent contrivance.

But it was not found as a fact, that there was such fraudulent purpose; and the findings of fact do not disclose such relations of the parties or such transactions as in their nature necessarily imply fraud—they are not such of themselves as the law treats as fraudulent, and the Court must so declare whenever its authority is invoked. The Court will not declare a transaction to be fraudulent in law, unless it be such as in its nature, or necessary relations, implies fraud; nor does the legal presumption of fraud arise, unless the act or acts complained of are *prima facie* fraudulent. When the acts done, and their purpose are fraudulant but are not such in their nature, the fraudulent purpose must be found as a fact, and the law will be applied declaring the transaction void.

We are therefore of opinion that the defendants, husband and wife, are estopped by their deeds respectively, and that the defendant Skinner, as appears by the findings of fact, got no title by his purchase at the sheriff's sale, under which he claims. We may add, that if he had obtained title as he alleges, long after the action began, he could not avail himself of it in this action—certainly, not without a proper pleading, allowed upon just terms.

There is error. The judgment must be reversed and judgment entered in favor of the plaintiff for the possession of the land, and for the rents, according to the report of the referee.

To that end let this opinion be certified to the Superior Court.

Error.