BENSIECK v. COOK, *Appellant.*

Division One, May 23, 1892.

1. **Ejectment**: PARTY DEFENDANT: MARRIED WOMAN.  A wife will be deemed a proper party defendant in an ejectment suit where her husband is insane, and she is the active defendant and as such withholds possession of the premises.

2. **Practice**: INCONSISTENT POSITIONS.  Parties will not be permitted to assume inconsistent positions in court.

3. ———: MISJOINDER OF DEFENDANTS: WAIVER.  Where improper joinder of parties defendant is apparent on the face of the petition, objection must be made by demurrer or it will be waived.

4. ———: MARRIED WOMAN.  So the improper joinder of a married woman as a party defendant affords no ground for reversing the judgment for the further reason that her name can be stricken out of the record in the supreme court.

5. **Ejectment**: INSANE DEFENDANT: GUARDIAN AD LITEM.  In ejectment against an insane defendant the court may appoint a guardian *ad litem,* and may render a binding judgment against the lunatic.

6. ———: TRUSTEE'S SALE: EVIDENCE.  Where the purchaser of land at a trustee's sale sues in ejectment to recover the premises sold, evidence that the defendant had paid part of the debt secured by the deed of trust, and had paid taxes on the land, is immaterial.

7. **Mortgage**: ASSUMPTION OF DEBT: SATISFACTION.  Where a mortgagor has conveyed land subject to a mortgage, the purchaser assuming the payment of the mortgaged debt, the mortgagor may bid in the land at a sale under the mortgage and transfer his bid to a third person without thereby effecting a satisfaction of the mortgage.

8. ———: ———: PAROL EVIDENCE.  The assumption by a purchaser of land of the payment of a debt secured thereon by mortgage may be established by parol evidence.

9. **Deed of Trust, Sale Under**: INSANITY OF OWNER OF EQUITY OF REDEMPTION.  A sale under a deed of trust is not rendered invalid by the fact that the owner of the equity of redemption who bought it subject to the incumbrance was insane at the time of the sale.

*Appeal from St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

AFFIRMED.

*H. D. Laughlin* for appellant.

(1) The deed from Sartore & Dungey to Cook was a warranty deed, except as against the Schopp mortgage. Cook did not assume the payment of that mortgage. If, therefore, Sartore & Dungey had paid the mortgage—as they should have done—there can be no question that Cook's title would have been complete. Jones on Mortgages [4 Ed.] sec. 864; *Johnson v. Johnson*, 81 Mo. 331. (2) Instead of paying the mortgage which they executed to Schopp, Sartore & Dungey permitted the property to be sold under that mortgage, and at the sale they became the purchasers. That amounted simply to a payment of the mortgage and left Cook's title clear. Jones on Mortgages [4 Ed.] sec. 864; *Lappen v. Gill*, 129 Mass. 349; *Ryer v. Gass*, 130 Mass. 227; *Bank v. McKenney*, 78 Mo. 442; *Strong v. Converse*, 8 Allen, 557–559; *Butler v. Seward*, 10 Allen, 466; *Bemis v. Call*, 10 Allen, 512. (3) "If one who has conveyed land by deed containing covenants of warranty afterwards purchases a mortgage upon the property which existed at the time of his conveyance, there is a merger of it." Jones on Mortgages, sec. 864; *Mickles v. Dillage*, 15 Hun (N. Y.) 296. (4) "If the owner of lands acquires a tax title to the same under a sale made when he was owner of the property, his purchase of the tax title is a redemption from the tax sale, and a deed to him of the tax title transfers no new title to him, but his title merges in his title to the lands." *Gould v. Day*, 94 U. S. 405. (5) Sartore & Dungey were the purchasers at the trustee's sale, under their own mortgage, for $5,301, and the trustee should

have made the deed to them. *Bush v. Macklin*, 9 S. W. Rep. 420. (6) It is true that a bid may be transferred to another, but any equitable rights or liens acquired by third persons against the original purchaser before the assignment of the bid are protected, and such a transfer is always subject to any equitable rights or liens of third persons as against the original purchaser which may have become vested before assignment of the bid. Jones on Mortgages, sec. 1652; *Proctor v. Farnum*, 5 Paige (N. Y.) 619; Rorer on Judicial Sales, sec. 145; *Culver v. McKeown*, 43 Mich. 322–326; *McClure v. Englehardt*, 17 Ill. 47; *Splahn v. Gillespie*, 48 Ind. 397. (7) The assignment of a mortgage to the wife of the mortgagor operated at common law as a discharge of the debt. *Wright v. Patterson*, 45 Mich. 261. (8) Where a mortgagee brings an action at law on a mortgage debt and sells the mortgaged property under execution and buys it in, the property would still be subject to the mortgage, and all the parties would be in the same condition as before. *Young v. Ruth*, 55 Mo. 515. (9) A trustee is the agent of both parties, debtor and creditor, and his duties should be performed with the strictest impartiality and integrity. *Sherwood v. Saxton*, 63 Mo. 78. (10) The trustee's deed to Bensieck conveyed only the interest Sartore & Dungey had by virtue of their bidding in (and thereby paying the mortgage) the property at the trustee's sale. It is, at best, only a quitclaim deed. One who takes property by quitclaim deed is not an innocent purchaser without notice, and takes only what the vendor could lawfully convey. The debt being paid by the only persons who were bound by contract to pay it (the evidence does not disclose any contract by Cook to pay the Schopp mortgage), the mortgage was dead, and the trustee had no right to make a deed to anyone, and as he did Bensieck took it with notice of pre-existing equities. *Campbell v.*

*Gaslight Co.*, 84 Mo. 355; *Stoffel v. Schroeder*, 62 Mo. 147; *Ridgeway v. Holliday*, 59 Mo. 444; *Stevens v. Horne*, 62 Mo. 473; *Mann v. Best*, 62 Mo. 491; *Austen v. Loring*, 63 Mo. 19. (11) The possession of the wife is the possession of the husband when he holds the title. *Bledsoe v. Simms*, 53 Mo. 305; *Farrar v. Heinrich*, 86 Mo. 521.

*Lubke & Muench* for respondent.

(1) When an insane party, who has no general guardian, is a defendant in an action at law, it is proper that the court appoint a guardian *ad litem* for him. *Mitchell v. Kingman*, 5 Pick. 431; *Sturges v. Longworth*, 1 Ohio St. 544; Buswell on Insanity, sec. 132. (2) The appellant, Mrs. Cook, was a proper party defendant. Furthermore, she waived all objections to her being a party by failing to demur, and by pleading to the merits and setting up an affirmative cause of action in her name alone. *First*, Regarded as a *feme sole* because of the insanity of her husband, and her living apart from him, she was a proper party defendant. *Harris v. Bohle*, 19 Mo. App. 529; *Phelps v. Walther*, 78 Mo. 320. *Second*. Regarded as a *tort-feasor*, acting absent from and without the knowledge of her husband, she was a proper party, and the judgment against both is proper. *Munter v. Bande*, 1 Mo. App. 484; *Merrill v. City of St. Louis*, 83 Mo. 255, and cases cited. When the ouster, dispossession or holding over is the act of the wife alone, judgment in ejectment may be rendered against her. In the case at bar Mrs. Cook took the affirmative position that the possession was hers, separate and apart from her husband. *Meegan v. Gunsollis*, 19 Mo. 418; *Hunt v. Thompson*, 61 Mo. 154. If she appears and defends by plea as a *feme sole* the judgment against her in eject-

ment is valid. *Von Schrader v. Taylor*, 7 Mo. App. 361. *Third.* Mrs. Cook's failure to demur to the petition operated as a waiver of the disability which she brought forward when the verdict went against her. She could not plead to the merits, submit to the court's jurisdiction and claim to stand as a *feme sole*, and when defeated turn about and set up the disability of coverture. *Fourth.* The revision of the practice act by the law of June 10, 1889 (Session Acts, 1889, pp. 164–210), rendered married women suable in this state as though they were single. Section 3468 on page 168 reads as follows: ''A married woman may in her own name, with or without joining her husband as a party, sue and be sued in any of the courts in this state having jurisdiction, with the same force and effect as if she were a *feme sole*, and any judgment in the cause shall have the same force and effect as if she were unmarried.'' R. S. 1889, sec. 1996. The act of June 10, 1889, went into effect August 23, 1889; the general revision of all the statutes November 1, 1889; both before the appeal in the case at bar was returnable. When the necessary facts are before the appellate court it can\make the necessary modification and enter the proper judgment. *Baldridge v. Dawson*, 39 Mo. App. 528. So that in the case at bar the point of appellant's coverture being no longer available, the appellate court may enter a judgment *de novo* for possession and rents from August 23, 1889. (3) The plaintiff was a sufficient expert to testify to the monthly values of the premises. *Railroad v. Calkins*, 90 Mo. 538. (4) The title of the respondent Bensieck does not rest on any deed or contract of Cook. It rests on the deed of trust made by Sartore & Dungey before Cook had anything to do with the property. *Hagerman v. Sutton*, 91 Mo. 531; *Mayes v. Robinson*, 93 Mo. 115. A purchaser at a mortgagee's sale who has paid the money is substituted to the rights

of the mortgagee, if the sale is irregular. *Jones v. Mack*, 53 Mo. 147. (5) Sartore & Dungey had the right to have the mortgaged property applied to the payment of the mortgage debt, so far as necessary for their protection against personal liability on the notes. Jones on Mortgages, sec. 678*a*. To this end they had the right to bid at the sale under their own deed of trust. Jones on Mortgages, secs. 1636 (end), 1887; *Houston v. Nord*, 40 N. W. Rep. 568; *Mooring v. Little*, 4 S. E. Rep. 485. And Sartore had the right to have Bensieck substituted as purchaser upon the latter's consummating the purchase. This is a recognized legal practice. Jones on Mortgages, sec. 1652; Rorer on Judicial Sales, sec. 950; *Ehleringer v. Moriarity*, 10 Iowa, 78; *Culver v. McKeon*, 43 Mich. 322; *Procter v. Farnum*, 5 Paige Ch. 619; *Splahn v. Gillespie*, 48 Ind. 397. And it makes no difference how technically defective the assignment or substitution is; if the deed is made, it is valid. *McClure v. Englehardt*, 17 Ill. 47. (6) If the sale by the trustee and substitution of Bensieck as purchaser were insufficient to pass the legal title to Bensieck, this did not satisfy the deed of trust. Bensieck having paid his own money became substituted to the rights of the holder of the deed of trust. *Jackson v. Magruder*, 51 Mo. 55; *Jones v. Mack*, 53 Mo. 47; *Wilcoxson v. Osborn*, 77 Mo. 621.

SHERWOOD, P. J.—Ejectment against Ann Cook and Joseph Cook, her husband, for possession of second and third floors of the south half of premises 1113 North Broadway, in the city of St. Louis. Petition in usual form, except that it alleged that plaintiff was entitled to the possession of the premises on such a day; that afterwards, on such a day, the defendant, Ann Cook, entered into the possession of the premises, and unlawfully withheld the same from

plaintiff; that at the time of such entry and ouster the defendants were and are still living separate and apart from each other, and that the aforesaid acts of the wife were done without the knowledge of the husband.

Summons issued and was served on both of the defendants in May, 1888. Joseph Cook being insane and in confinement, a *guardian ad litem* was appointed for him, who answered in usual form. Ann Cook answered separately in a lengthy answer, filed in June, 1889. This answer was a general denial, and in substance stated that Joseph Cook for more than five years last past had been insane and was now insane, and for that space of time confined in an insane asylum and incapable of attending to any business or of defending the suit, or of understanding the nature of the same; that for three years prior to the fourth day of November, 1882, said Joseph had been insane, an inmate of an insane asylum during said three years, and at said date was insane, and wholly incapable of attending to business, or of understanding the nature of a contract; that at said date the property in question was owned by Joshua Sartore and Francis W. Dungey, on which property was a deed of trust made by Sartore & Dungey to secure a debt due to Jacob Schopp for $5,000, due in installments and interest notes, having several years to run; that on said date Sartore & Dungey sold the premises of which that in litigation forms part to Joseph Cook for the consideration of $7,000, $2,000 of which consisted in cash paid by said Cook, and the assumption by him of the $5,000 indebtedness aforesaid; and thereupon said Cook entered into possession of the premises so sold to him, and defendant, Ann Cook, has been in possession of said premises ever since; that immediately after said transaction Joseph Cook became so violently insane that he had to be confined in the insane asylum, and has been there confined ever since;

that thereafter Ann Cook paid on said deed of trust due Schopp $2,200, which with the amount paid by said Joseph aggregates the sum of $4,200; that in addition thereto said defendant Ann has paid taxes and made improvements on the property amounting with the sums already mentioned to $5,500; that the improvements were made in good faith; that at the time Sartore & Dungey sold to said Joseph said property they well knew he was insane and unable to transact business, and so did plaintiff; and they, Sartore & Dungey, made said Joseph a general warranty deed for said property, *except as against said deed of trust;* that said premises were benefited to the extent of said money paid and improvements made in good faith by *defendants*, and *they* prayed for judgment for that sum.

The answer then alleges that on April 11, 1888, the property in question was at the instance of Sartore & Dungey and plaintiff advertised for sale under the Schopp deed of trust and was knocked down to Sartore & Dungey; that, instead of taking a deed from the trustee to themselves, Sartore & Dungey caused one to be made to plaintiff for the purpose of injuring and defrauding defendant, and that these acts constitute a payment of the deed of trust.

The reply admits the insanity of Joseph Cook, and his confinement in the insane asylum, but denies Ann Cook's possession of the whole of said two houses, and reiterates that she is only in possession of the second and third stories of 1113 North Broadway; denies that Joseph Cook became violently insane immediately after buying the property from Sartore & Dungey; denies the payments made by Ann Cook; denies that he or Sartore & Dungey knew Cook was insane; denies each and every allegation contained in defendant's last special defense, and says that plaintiff did buy the

property at a sale under said deed of trust, and that he bought the same for himself in good faith, and denies that there was any fraud whatever connected with the sale and purchase.

The deed made from Sartore & Dungey to Joseph Cook recited a consideration of $7,000; was a general warranty deed but excepted from the warranty the deed of trust previously given by Sartore & Dungey to Schopp. The deed of trust previously made by Sartore & Dungey under which the property was sold was in ordinary form, and made the recitals of the trustee's deed *prima facie* evidence. Other facts necessary to a determination will be noticed in discussing the various points to which they pertain.

At the close of all the evidence defendants asked a series of instructions to the effect that plaintiff could not recover; that, if Sartore & Dungey bid in the property at the trustee's sale, plaintiff could not recover; that, if Sartore & Dungey, or either of them, bid in the property at the trustee's sale, this satisfied the deed of trust and perfected Cook's title; that the trustee had no right to make a deed to anyone but the actual bidder at the sale; that defendant, Ann Cook, being a married woman, and her husband being insane, the plaintiff was not entitled to recover.

All these instructions were refused by the court, and defendants excepted. The court then gave to the jury a peremptory instruction to find for plaintiff on defendants' counterclaim, and to find for him as to possession, and to assess the damages and monthly values of the property acording to the reasonable value thereof. The jury found as directed, judgment was entered for plaintiff; but defendant Ann alone has appealed.

OPINION.

I.   The wife was a necessary party to the suit; she withheld possession· of the premises, and was the only active defendant in the cause; she alone filed a motion for a new trial and in arrest based upon the idea, that she being a married woman, and her husband insane, no judgment could be rendered in the cause against either of them, *first*, because her husband was insane, and, *second*, because she was a married woman.   Our statute requires that ejectment shall be brought against the person in possession of the premises.   R. S. 1889, sec. 4629.  Here, considering the situation of the husband, his enforced absence and confinement, his unfortunate mental condition, the affirmative character of the defense made by the wife, and her withholding the possession, she must be regarded as a proper party defendant.   Sedgwick & Wait on Trial of Titles to Land [2 Ed.] sec. 255.

II.   But having assumed the role of being a proper and necessary party defendant, having pleaded to the merits, she cannot, after being cast in the suit, now change front and insist that error occurred in making her a party defendant.   Courts of justice cannot be trifled with in this way.   Parties litigant are not allowed to assume inconsistent positions in court; to play fast and loose; to blow hot and cold.   Having elected to adopt a certain course of action, they will be confined to that course which they adopt.   Bigelow on Estoppel [5 Ed.] 673, 717; *Brown v. Bowen*, 90 Mo. 184; *McClanahan v. West*, 100 Mo. 309; *Tower v. Moore*, 52 Mo. 118; *Smiley v. Cockrell*, 92 Mo. *loc cit.* 112, and cases cited.

III.   Furthermore, if the defendant Ann was improperly joined as a party defendant, the course indicated by the statute should have been pursued, and

the objection taken by demurrer, as the defect appeared on the face of the petition. Failing to take the objection in this way, it must be deemed |to be waived. R. S. 1889, secs. 2043, 2047. The authorities in this court on this point are too numerous for citation. The petition, in any event, stated a cause of action as to the *husband*, and, if the wife was improperly joined as party defendant, the objection on that score as to the wife had been waived, and could not be raised by objecting to the introduction of any evidence or by instructions to the jury. *Horstkotte v. Menier*, 50 Mo. 158; *Dunn v. Railroad*, 68 Mo. 268.

IV. Moreover, granting that Ann Cook was improperly joined as a party defendant, this defect cannot cause a reversal of the judgment, because her name can be stricken out even in this court; and this would be in accordance with the statute, and with a long line of decisions in this court, beginning with *Cruchon v. Brown*, 57 Mo. 38, and ending with the recent case of *State ex rel. v. Tate*, 109 Mo. 265, where many of the authorities on this point are collated.

V. The trial court pursued the right course in appointing a guardian *ad litem* for defendant, Joseph Cook. *Mitchell v. Kingman*, 5 Pick. 431; Buswell on Insanity, sec. 132; *Sturges v. Longworth*, 1 Ohio St. 544. And the power of the court to appoint such a guardian, of necessity, concedes the power of the court, upon the proper basis of facts being presented, to render a judgment as binding on the lunatic and his property interests, as a similar judgment would be upon a sane person.

VI. On the part of defendants evidence was offered tending to show that |Joseph Cook was placed in an insane asylum thirteen or fourteen years ago; that he was discharged, and in 1882 was living on Biddle street, and later at the premises on North

Broadway; that at the trustee's sale in April, 1888, the property was struck off to Sartore for $5,301, who paid down $50 earnest money; that Cook carried on the blacksmithing business in the North Broadway premises in 1882; that afterwards he was again placed in an asylum, and was there at the time of the trial; that after Cook was last sent away his wife and nephew continued the blacksmithing business, and occupied the premises in question, and that when Cook bought the property from Sartore & Dungey he consulted with friends and also had the title examined by an investigator before the trade was closed.

A son of Cook's testified to several short street conversations which his father had with Bensieck some seven or eight years ago, when Bensieck was having some building done, and this was before the sale by Sartore & Dungey to Cook, and the latter certainly gave no indications at that time of being insane, and had been several years before discharged from the asylum. Whether Bensieck, the plaintiff, was acquainted with Joseph Cook, is by no means clear; he denies any acquaintance, nor does it appear, if he was acquainted with him, that he knew of his mental affliction.

Defendant, Ann Cook, testified that she was in possession of the property in question from the time her husband was last sent to an asylum, after 1883; that she paid to Mr. Espenschied, the holder of the notes secured by the Schopp deed of trust, five of the interest notes aggregating $570, and one of the principal notes amounting to $1,000; also, that she made him three other payments aggregating $360, and another amounting to $175.

When the notes and receipts were offered in evidence plaintiff's counsel objected, for the reason that these payments were insufficient to show a liquidation of the deed of trust. The court sustained the objection,

and defendants excepted. Inasmuch as the notes and receipts did not amount to a satisfaction of the debt secured by the deed of trust, the court below did right in excluding them when offered, and the ruling was also correct which denied the admission in evidence of receipts showing the amount Ann Cook had paid out for taxes on the property.

VII. The evidence discloses that Mrs. Cook offered to sell the property to plaintiff about a year before he bought it; that he knew Sartore & Dungey; that about a week before plaintiff bought the property Sartore & Dungey offered it to him; that he took time "to study about it;" that after a week he decided to buy it and had the title examined by an investigator, and at the office of the trustee he closed the matter, paid down $5,500, got the trustee's deed and put that on record the same morning. He also paid $353.25 back taxes. Although the trustee's deed called for only $5,301, he actually paid $5,500. Plaintiff stated that he is a livery-stable proprietor; that he did not attend the trustee's sale, but bargained for the property with Sartore & Dungey, who had bid it off at that sale, and that the trustee's deed was made to plaintiff by their authority and consent.

Sartore & Dungey had the undoubted right to have the mortgaged property applied to the payment of the mortgage, so far as was necessary for their individual protection against personal liability on the notes. "Where the mortgagor has conveyed the equity of redemption to one who has assumed the payment of the mortgage debt, so that in effect the mortgagor becomes a surety of the debt, he has the right to have the property first applied to the payment of the debt, or restored to him upon his paying it." 1 Jones on Mortgages [4 Ed.] sec. 678a. As a corollary to this right and necessarily incident thereto, Sartore & Dungey were

fully authorized and competent to bid at the sale under their own deed of trust.    2 Jones on Mortgages [4 Ed.] secs. 1636, 1887; *Houston v. Nord*, 40 N. W. Rep. 568; *Mooring v. Little*, 4 S. E. Rep. 485.

VIII.    And Sartore, as an incident to the rights aforesaid, had the further right to pay $50 earnest money which he paid on his bid, which it seems is customary, and to deduct that sum out of the amount paid by Bensieck, the plaintiff.

IX.    Having bid in the property for their own protection, Sartore, the bidder, was undoubtedly entitled to have Bensieck substituted as purchaser upon the latter consummating the purchase.    This is every day practice.    Jones on Mortgages, sec. 1652, and cases cited; *Massey v. Young*, 73 Mo. 260, and cases cited.

X.    The answer of the defendant wife contains the express admission that her husband bought the property of Sartore & Dungey for $7,000; $2,000 of which he paid in cash, and assumed the payment of the deed of trust to Jacob Schopp, amounting to $5,000; and the deed of Sartore & Dungey to Cook, excepted out of their warranty the Schopp indebtedness.    This assumption by Cook of the Schopp debt was capable of being established by parol.    *Burnham v. Dorr*, 72 Me. 198. And the facts that Cook, as shown by the evidence, paid $2,000 cash down at the time of his purchase, and that his wife subsequently paid off a portion of the mortgage debt to Espenschied, the holder of the notes secured by the Schopp deed of trust, and the exception contained in the warranty deed of Sartore & Dungey to Cook, abundantly support the theory of Cook having made a parol assumption of the indebtedness secured by the Schopp deed.    These things being taken as true, it clearly appears that Sartore & Dungey were not bound to pay off the deed of trust which they had

expressly excepted out of their warranty to Cook, and which Cook had agreed to pay. This being the case, there is no ground to apply the rule which holds that when one is bound to pay a mortgage debt, and does so, this amounts to a satisfaction and discharge of the mortgage.

There is, therefore, no basis in this instance for the operation of such a rule; because it was Bensieck and Bensieck's money that bought the property and paid therefor, and, he being properly substituted as a bidder at the trustee's sale, the result is precisely the same as if he had personally bid in the property at the court-house door when the trustee's hammer fell.

XI. Of course, when the trustee's sale was consummated by his deed to Bensieck, Cook's prior title went by the board. *Plum v. Mfg. Co.*, 89 Mo. 162.

XII. It is not seen what possible relevancy Cook's insanity, even if known to Bensieck, and there is no evidence of this, could have by way of countervailing the force and effect of a deed of trust not made by him and which was in existence long before he purchased, subject to which he bought and which he assumed as part of the consideration of his own purchase.

XIII. Nor is it at all apparent what counterclaim Mrs. Cook or her husband can have against Bensieck for moneys which she paid out to protect her husband's equity of redemption. All that Mrs. Cook proved was that, while enjoying for years the possession, rents and profits of the property, she paid some of the notes secured by the deed of trust, and thus prevented an earlier foreclosure. Certainly, Bensieck, the purchaser at the foreclosure sale, in absence of an express promise grounded upon a valuable consideration, was under neither a moral or legal obligation to reimburse her for sums thus expended. The judgment should, therefore, be affirmed. All concur.