C. H. ALBERS COMMISSION COMPANY et al., Appellants, v. MARY E. SPENCER, Executrix, et al.

Division One, July 12, 1911.

1. **INJUNCTION: Dissolution: Appeal.** Neither a decree for an injunction nor one dissolving an injunction is suspended by an appeal.

2. ———: ———: ———: **Continuation of Writ: Cost Bond.** A bond for an appeal, operating as a mere *supersedeas* on costs, etc., does not have the effect to revive an injunction dissolved below. Unless the trial chancellor order the continuance of the injunction pending the appeal, on terms fixed as the price of such order, the injunction is not continued. Therefore, where plaintiff gave the usual bond for an appeal from a decree dissolving the injunction, but the court also refused a request to

make an order continuing the injunction in force pending the appeal, the injunction was dead and inoperative to all legal intents and purposes pending that appeal.

3. ———: ———: ———: Ancillary: Bond: Damages. Whether the injunction was the life of the bill or ancillary to the main purpose, the bond was the cause of the injunctive writ, and the writ was the cause of the damages, if any, and the appellant is liable on the bond for whatever damages the appeal caused respondent, but no others.  And if necessary the staute will be read into the bond for the purpose of measuring the bondsmen's liability, when that can be done without doing violence to its terms.

4. ——— ———: Bondsmen: What Damages Are Assessable. Assessment of damages on the dissolution of an injunction arises under such a variety of divergent circumstances that lively concern must be exercised not to apply mechanically the language used in one decision on one state of facts to another case of dissimilar facts.  The general doctrine is that compensation for losses sustained by a defendant which are the actual, natural and proximate result of the wrong committed by the restraining order, while the latter is alive and operative, is the measure of damages to be assessed against bondsmen.

5. ———: ———: ———: ———: Attorney's Fees at Trial. Defendant's attorney's fees for services rendered in and about the proceedings leveled at getting rid of an injunction, and releasing defendant from the restrictions of the restraining order, are to be taken into account in estimating his damages, when he sues on the injunction bond.

6. ———: ———: ———: ———: Attorney's Fees On Appeal.  The restraining orders in an injunction are not the natural and proximate cause of the services of defendant's attorneys in the appellate court, where the trial court dissolved the injunction and refused to make an order continuing the injunction in force pending the appeal, though a *supersedeas* bond for costs, damages, etc., was given.  Services of counsel rendered in securing the dissolution of a temporary injunction are assessable in a suit on the bond given in pursuance to that order; but when the injunction was dissolved and no order was made continuing it in force pending the appeal, the case stands thereafter as if there were no injunction at all, and hence the attorney's fees in a suit on that bond should not include services rendered on appeal after the dissolution of the injunction; nor should they include services rendered in resisting the application for a temporary injunction.  The damages do not precede, but follow the order, and the order being dissolved the damages cease.

236 Sup.—39

7. ———: ———: ———: ———: ———; 'Distinguishable from Partition, etc. Cases relating to partition, attachment, divorce and other suits where attorney's fees are allowable on appeal, on due and timely application, are readily distinguishable in principle from injunction suits wherein damages are assessed against bondsmen and where the terms and objects of the bond guide and limit the range of damages as to counsel fees to the actual lifetime of the restraining order and to services in lifting that order by dissolving the injunction.

8. ———: ———: ———: ———: Interest During Appeal. During the pendency of the appeal from an order dissolving the injunction, interest on the money (or "marginal" certificates of deposit in the grain deal) tied up by the restraining order, is not allowable as an element of damages in the suit on the injunction bond. The final judgment dissolving the injunction, and a refusal of the court to continue it in force pending the appeal, left defendants free to lay their hands on the money or those certificates of deposit to cover "margins;" and the fact that the bank in which they were deposited retained them, and that the Exchange on which the wheat deal was made refused to indorse them and thereby release them to defendants pending the appeal, as it by its rules was authorized to do, cannot be laid at the door of the bondsmen.

9. ———: ———: ———: ———: ———: Estoppel; Ruling of Exchange. Where the court dissolved the injunction and refused to continue it in force pending an appeal, there was no restraining order thereafter in 'force, and no rule of an exchange could keep it in force; and the fact that the bonds-men appeared before the board of directors of the exchange and resisted their indorsement of the certificates of deposit to cover "margins," on the ground that the appeal kept the order in force, and the board for that and other reasons refused to indorse the certificates, as it had the right to do, the result being that the bank held the certificates pending the appeal, the bondsmen in the injunction suit are not estopped to contend that they are not chargeable with interest pending the appeal.

10. ——— ———: Assessment of Damages: Before Final Judgment on Merits. Where there has been a hearing on the application for a temporary injunction, and the restraining order has been dissolved, and plaintiff appealed from that interlocutory order, and the appellate court affirmed the judgment, thereafter the motion to assess damages on the injunction bond need not be delayed until the case is disposed of on its "merits."

11. ———: ———: ———: **Motion to Strike Out.** A motion to strike out a motion to assess damages filed at once upon a dissolution of the injunction and allowed to remain in abeyance pending an appeal, should not be sustained.

12. ———: ———: ———: **By All Obligees.** In a suit on injunction bonds, where the restraining orders issued to several defendants whose interests are obviously several, some of whom have no substantial interest, the liability is several, and those having several interests may proceed by motion separately to have damages assessed in their favor, and are not precluded from doing so because of the refusal of others to join in the proceeding.

13. ———: ———: ———: **Sufficiency of Motion.** Motions to assess damages on the injunction bond need not be framed with the particularity of suits on the bond. So long as the grounds stated in the motions cover, with reasonable precision, the elements of damages asked, they are sufficient.

St. Louis City Circuit Court.— *Hon. Jesse A. Mc-Donald,* Judge.

REVERSED AND REMANDED.

*Barclay, Fauntleroy & Cullen* for appellants.

(1) No judgment should be given for damages on a bond for temporary injunction until a final disposition of the case is reached on its merits and a final decree rendered, which had not taken place in this cause when judgment on the bond was entered in favor of some of the obligees, and not all. Railway v. Railroad, 135 Mo. 554; Price v. Calumet, 82 Mo. App. 19; Cohn v. Lehmann, 93 Mo. 584; Johnson v. Board, 65 Mo. 47; 1 Beach, Inj., sec. 17; Jones v. Ross, 48 Kan. 474; Musgrave v. Sherwood, 76 N. Y. 194; Tea Co. v. Stewart, 120 N. W. 962; Crawford v. Pearson, 116 N. C. 718; Blythe v. Hinkley, 84 Fed. 228; Thomas v. Wooldridge, 23 Wall. 288. (2) The petition in this cause seeks other relief in equity in various forms, beyond the injunctive remedy ancillary thereto; and the ruling on the injunctive phase was

not deemed final by this court, when it merely affirmed the dissolution of the preliminary restraining order, leaving other issues for decision as developed by the pleadings. The ruling of this court is the "law of the case" on that subject. Bank v. Monarch Co., 68 Mo. App. 603. There must be, in any aspect of the record, some final disposition of, or judgment in, the main case, before any assessment of damages is permissible on the interlocutory injunction bond. Konta v. Exchange, 131 S. W. 380; Lacey v. Davis, 126 Iowa, 675; Tea Co. v. Stewart, 120 N. W. 962; Railway v. Adams, 30 So. 44. (3) The motions for damages do not state essential facts sufficient to constitute a cause of action or grounds for any assessment, because they omit any facts whatever except that some injunction was "wrongful," and a recital of damages. Such a motion is in the nature of a suit or cross-action for damages, and it must recite facts to warrant the order prayed. Eakle v. Smith, 27 Md. 467; 10 Ency. Pl. & Pr. 1128; Railway v. Railway, 135 Mo. 549; Paxon v. Talmage, 87 Mo. 14. This point was specifically raised below, but, if such was not the case, this point would be nevertheless available on appeal, without any such introduction. Lilly v. Menke, 126 Mo. 190; State ex rel. v. Duncan, 130 Mo. App. 311. (4) All the obligees in the injunction bonds were necessary parties to the motions, and as only some thereof were heard on such motions, there could be no valid finding and judgment as to a share only of such parties, leaving the other motions pending below. Ryan v. Riddle, 78 Mo. 521; Hotel v. Flynn, 238 Ill. 636; 10 Ency. Pl. & Pr. 1127; Ohnsorg v. Turner, 33 Mo. App. 486. A motion of this sort is in effect a counter-suit on the bond and governed by like principles. Railroad v. Railroad, 135 Mo. 549. (5) No final judgment for damages on the five injunction bonds could properly be rendered until all the motions for assessment had been heard. In this cause only one of three motions

for such assessment had been tried when judgment was rendered. Helmkampf v. Wood, 84 Mo. App. 261; Banknote Co. v. Assn., 79 Mo. App. 612; Adams v. Railroad, 30 So. 44. (6) Two motions by the same party (covering different grounds of claim for damages on the injunction bonds) are not permissible at the same time. The appellants' motion to strike out the first one as supplanted by the last should have been sustained, whereas it was overruled. R. S. 1899, sec. 666; Ward v. Davidson, 89 Mo. 455; Tichnor v. Voorhis, 46 Mo. 110; Basye v. Ambrose, 28 Mo. 39; Boisse v. Laugham, 1 Mo. 572; Nedvidek v. Meyer, 46 Mo. 602; U. S. M. Co. v. Ramlose, 109 S. W. 572; Hackett v. Underwriters, 79 Mo. App. 19; Intern. Co. v. Flynn, 238 Ill. 636. (7) A suspensive appeal from an interlocutory order dissolving a preliminary injunction does not revive the injunction, and here the court refused to make a special order to revive the same; so that, pending the appeal, the preliminary order was no longer in force. State v. Dearing, 180 Mo. 69; Neiser v. Thomas, 46 Mo. App. 47; Teasdale v. Jones, 40 Mo. App. 243; Graham v. Conway, 82 Mo. App. 647. (8) An order granting or denying a temporary injunction order is not a final determination of the controversy. Harrison v. Rush, 15 Mo. 175; Brown v. Assn., 59 N. Y. 242; Paul v. Munger, 47 N. Y. 469; Beaudry v. Felch, 47 Cal. 186; Sanitary Works v. Reduction Company, 94 Fed. 696. Only recent special statutory permission and authority have allowed an appeal from an interlocutory order dissolving a preliminary injunction. R. S. 1899, sec. 806. (9) Evidence of expenses and other claims accrued after the temporary injunction was dissolved was improperly admitted in evidence against protest and exceptions of appellants. Brown v. Baldwin, 121 Mo. App. 126; Loehner v. Hill, 17 Mo. App. 32. These items are commingled inextricably in the findings of the trial court, so that none may sever

what might be allowable from the claims which are unfounded; so that the only cure is a reversal of the findings so made. Slattery v. City, 120 Mo. 184; Hunter v. City, 49 Mo. App. 17; Radtke v. Box Co., 229 Mo. 1. It is the duty of one claiming such damages to sever and submit those items for which recovery is lawful; otherwise his proof fails. State ex rel. v. Taylor, 68 S. E. 379; Railways v. Pardue, 131 S. W. (Tenn.) 862); Goransson v. Mfg. Co., 186 Mo. 300. (10) The admission of evidence for the movents touching hearings before the directors of the Exchange, on three different occasions, on applications to those directors for orders to pay over deposit certificates, was erroneous, and wholly irrelevant. (11) The admission of evidence regarding interest on funds in possession of a third party (The National Bank of Commerce) and the allowance of $6,288.92 for interest, pending the appeal from the order dissolving the temporary injunction, and after its dissolution, were items not "occasioned by such injunction," and hence not within the scope of such a motion for damages under the statute on that subject. The proceedings before the Board demonstrate that the Board knew full well that it refrained from ordering the deposits paid, not because it was considered that the spirit of the Exchange rules called for that ruling while the suit (irrespective of the injunction feature) was not finally decided. R. S. 1899, sec. 3637; Teasdale v. Jones, 40 Mo. App. 250. (12) The court erred in giving the first declaration of law for defendants because it states incorrectly the measure of damages by including therein damages after dissolution which are not covered by the bonds in suit. Teasdale v. Jones, 40 Mo. App. 250. (13) The second instruction for defendants is erroneous in allowing interest to July 26, 1907, when the preliminary injunction was dissolved March 14, 1904, and any delay in payment thereafter was not due to the restraining order and

not within the terms of the bonds given by appellants. The terms of those bonds should not be enlarged by construction beyond their terms, "damages that may be occasioned by such injunction." R. S. 1899, sec. 3637; Teasdale v. Jones, 40 Mo. App. 250; Ovington v. Smith, 78 Ill. 250; Hall v. Williamson, 9 Oh. St. 17.

*Judson & Green* for respondents.

(1) Since the amendment of our injunction statutes in 1891, an order dissolving a temporary injunction may be appealed from. Laws 1891, p. 70; R. S. 1909, sec. 2028; Comm. Co. v. Spencer, 205 Mo. 105; Railway v. Sweet, 110 Mo. App. 100. (2) The practice in this State requires that a motion for the assessment of damages on an injunction bond shall be filed at the term at which the order dissolving the injunction is made, and that, in case of an appeal from the order dissolving the injunction with a *supersedeas* bond, the actual assessment of the damages on the motion must be deferred until the appeal is finally determined. Moore v. Bank, 58 Mo. App. 469; Fears v. Riley, 147 Mo. 453; Sutliff v. Montgomery, 115 Mo. App. 592; Railway v. Sweet, 110 Mo. App. 100. (3) There is, however, the further rule that where an interlocutory order dissolving a temporary injunction is appealed from, an additional or supplemental motion for the assessment of damages may be filed after the final decision, to cover and include services rendered in the appellate court in sustaining the order of the lower court. This rule arises "*ex necessitate rei.*" Railway v. Sweet, 110 Mo. App. 100. (4) It is wholly immaterial whether appellants' contention, that the judgment of the lower court dissolving the temporary injunction did not dispose of the entire case but still left a cause of action to be tried upon the merits, is sound or un-

sound, because, under the practice in this State since the amendment of 1891, respondents were entitled to have the damages assessed upon their motions as soon as the appeal from the order dissolving the temporary injunction had been affirmed, without waiting for any final hearing on the merits. There is now a final judgment on the right to a temporary injunction. R. S. 1909, sec. 2524; Padgett v. Smith, 206 Mo. 303; Fears v. Riley, 147 Mo. 453; Railway v. Sweet, 110 Mo. App. 100. If appellants had not taken an appeal from the order dissolving the temporary injunction and there had been a subsequent trial on the merits, and after that an appeal, then this court on the appeal would review the lower court's action in dissolving the injunction; and in such case it might have been said that there was no final judgment, on the right to a temporary injunction, until the appeal from the merits had been heard in the appellate court. Such was the case of Railroad v. Railroad, 135 Mo. 554, and of Baking Powder Co. v. Baking Powder Co., 82 Mo. App. 19, the only two cases cited under appellants' point 1 which have been decided since the statute of 1891 was enacted. But where the order of the lower court dissolving the injunction has been appealed from and the appeal has been heard in this court and the judgment of dissolution affirmed, then there can be no further review of the order dissolving the injunction, and the obligees are entitled to have damages assessed without awaiting the result of any further so-called trial of the "merits." Sutliff v. Montgomery, 115 Mo. App. 592; 22 Cyc. 953; Buford v. Packet Co., 3 Mo. App. 172. (5) Appellants are not entitled to another trial of this case, or to a so-called "trial on the merits." Comm. Co. v. Spencer, 205 Mo. 105; Davis v. Wade, 58 Mo. App. 641; Powell v. Conady, 95 Mo. 713. Where an injunction is the life of a bill its final dissolution terminates the case. Powell v. Canady, 95 Mo. 713; 22 Cyc.

949; Goddard v. Railroad, 202 Ill. 362; Gulick v. Fisher, 92 Md. 352; Davis v. Wade, 58 Mo. App. 641; 2 High on Injunc., sec. 1706. (6) Respondents' motions for assessment of damages on these bonds are in proper form. The "Stockholders" cases cited by appellants do not apply to motions to assess damages on injunction bonds. Baking Powder Co. v. B. P. Co., 82 Mo. App. 23; Fears v. Riley, 147 Mo. 453; Hamilton v. Stewart, 59 Ill. 330. The court in such proceedings takes judicial notice of the original petitions and of all other papers filed in the cause. B. P. Co. v. B. P. Co., 82 Mo. App. 23. (7) Each of the obligees in an injunction bond can file a separate motion for the assessment of all damages which have accrued to him by the suing out of the injunction. Hemkampf v. Wood, 85 Mo. App. 227; Fears v. Riley, 147 Mo. 453; Nolan v. Johns, 108 Mo. 431. Ryan v. Riddle, 78 Mo. 521, is, since the amendment of our statutes, no longer an authority on this question. Helmkampf v. Wood, 85 Mo. App. 227. It appears from the allegations of appellants' petitions that Spencer and Milliken were the only real parties in interest— the only parties who could have suffered damages by the suing out of the injunction. Fears v. Riley, 147 Mo. 453. (8) Inasmuch as the brokers who were made parties defendant in these causes were merely the agents of Spencer and Millikin and had no real interest in the litigation, it is wholly immaterial whether they were parties in either of respondents' motions for the assessment of damages. Not being necessary parties it would not be reversible error to either include or omit them. Fears v. Riley, 147 Mo. 453; Sutliff v. Montgomery, 115 Mo. App. 597. Furthermore, if it could be held that there was any defect or irregularity in not hearing all of the motions together, such defects and irregularities were waived by appellants' failure to refer to them in their motions for new trial. Helm-

kampf v. Wood, 84 Mo. App. 268; Baking Powder Co. v. B. P. Co., 82 Mo. App. 23. (9) Appellants are es- topped from claiming that said injunction was not in force pending the former appeal to this court; and from claiming that interest on the certificates of de- posit which were tied up by the temporary in- junctions should not be assessed as damages against them, for the full term that the Merchants' Exchange refused to indorse and deliver to respondents the cer- tificates of deposit in question. By appearing be- fore the Merchants' Exchange and asserting and arguing there that the temporary injunction orders would remain in force until the Supreme Court had finally decided the first appeal, and by that argument inducing the Merchants' Exchange to withhold its in- dorsement of the said certificates of deposit, appel- lants are estopped to deny their liability for that dam- age on these motions. This is a clear case of estop- pel *in pais*. Curtiss v. Moore, 163 Mo. 442; Kennedy v. Bambrick, 20 Mo. App. 630; Coney v. Laird, 153 Mo. 408; Boogher v. Frazier, 99 Mo. 325; Green v. St. Louis, 106 Mo. 454; De Moss v. Furniture Co., 74 Mo. App. 117; Boettger v. Roehling, 74 Mo. App. 257. (10) Under the evidence in this case it must be held that interest on this sum of money during the time that the Merchants' Exchange, at the request and instiga- tion of appellants, refused to pay it over, was just as much ''occasioned'' by the injunction as were the fees for attorneys' services in obtaining a dissolution.

LAMM. J.—This is an appeal, by the principal and sureties on injunction bonds, from the assessment of damages on motions on the dissolution of five in- junctions. From a judgment assessing such damages at $10,867.11, said principal and sureties appeal.

A short history of the litigation is not amiss, viz.: In December, 1903, the C. H. Albers Commission Co. (hereinafter called appellant) brought five suits in

equity—the first against John T. Milliken, Corwin H. Spencer, The Merchants' Exchange of St. Louis, The National Bank of Commerce, in St. Louis, Thomas Akin and thirteen others; the second against Sherry and Bacon and the same defendants in the first suit, excepting Thomas Akin; the third against William H. Gardener and the same defendants in the first suit, omitting Thomas Akin; the fourth against John Mullally Commission Co. and the same defendants in the first suit, omitting Thomas Akin; and the fifth against Ballard, Messmore and Co. (naming the members of the same) and the same defendants in the first suit, omitting Thomas Akin. Those suits had a common object and pertain to the same subject-matter—a "deal" in No. 2 red winter wheat.

At a certain time thereafter Corwin H. Spencer departed this life and Harlow B. and Mary E. Spencer, nominated as executor and executrix respectively in his will and who took upon themselves the burden of administration, were brought in as parties defendant.

Those defendants having a substantial money interest in the subject-matter were Spencer and Milliken. Some of the others were their brokers in buying No. 2 red winter wheat for December, 1903, delivery—such purchases evidenced by contract. The National Bank of Commerce was made a party, because it held certain deposits made by plaintiff to cover "margins" in that deal. The Merchants' Exchange and its directors were made parties because the contracts for wheat were made on the floor of the Exchange and were subject to its rules—all the principals and brokers being members.

During September, October and November, 1903, Spencer and Milliken (speaking of the two in the singular) was a "bull," and the appellant was a "bear" on the red winter wheat market. We may say, in passing (speaking in figure), that the particular bull in question was a dangerous animal, as every

bull—except the harmless variety known as the Irish bull—is now and then. He had hay upon his horn, a sign of tossing and goring. (*Foenum habet in cornu*, as put by Horace.)

During those months the corporate appellant sold to Spencer and Milliken about 300,000 bushels of No. 2 red winter wheat at from 80 to 84 cents for future delivery, with the option to deliver on any day during December, 1903. During that December the market price of No. 2 red winter wheat in the St. Louis market ranged from 90 to 93 cents. Present rumors of war, a short crop and heavy selling, the market price tended up and seemed stiffly buoyant, and the financial estimate the corporate appellant put upon its judgment as a seer in forecasting the market price of red winter wheat for December, as evidenced by its said contracts, was wide the mark. Accordingly, it stood to lose heavily to Milliken and Spencer. On December 31st, the last day of delivery, the market closed at 92 cents. To secure margins against a rising market it had deposited from time to time with The National Bank of Commerce about $37,000. That bank issued certificates of deposit for these margins, which, by their terms, were payable on the indorsement of the seller and buyer, or by virtue of an order and indorsement of the board of directors of the Exchange. In this condition of things appellant, as seller, refused to indorse them over to Milliken and Spencer. Not only so, but, to keep said directors from making an order indorsing the certificates under the rules of The Merchants' Exchange, five suits (those heretofore mentioned) were brought, each charging an unlawful combination to control prices, a "corner" by Spencer and Milliken and their confederates to raise the price of No. 2 red winter wheat for December delivery, to control the elevator capacity contributing to the St. Louis market, and by their unlawful conspiracy to forestall the St. Louis market in red winter

wheat and to cause it to reach and remain at a ficti- tious and grossly excessive price.     It was further charged that the enumerated acts of Spencer and Milli- ken, et al (enumerated), were in violation of the law for the prevention and suppression of pools, trusts and conspiracies to raise or control the price of com- modities; that the board of directors of said Exchange were claiming power to direct the payment of said deposits of margins to Spencer and Milliken and were about to use it, but that the enforcement of said wheat contracts would be inequitable, etc.

Wherefore plaintiff asked relief in that the con- tracts be annulled and adjudged non-enforceable by reason of the premises, and an injunction was prayed perpetually restraining such enforcement in any man- ner and to restrain defendants from applying said deposited margins in discharge of said grain con- tracts.   Relief was also prayed that the funds be ad- judged to be returned and restored to plaintiff, and for a temporary injunction against certain of the de- fendants from transferring the funds on deposit as margins or the certificate of deposit therefor to cer- tain of the other defendants, and against such others from receiving said funds or certificates until the fur- ther order of the court.

Temporary injunctions were issued in those cases on giving an injunction bond in each. (Note: The principal in each bond was C. H. Albers Commission Co., the sureties were C. H. Albers and Henry B. Vogelsang.) The condition of each bond narrated that the Albers Commission Co., on January 7, 1904, obtained a restraining order or injunction against said "obligees" (the obligees being the defendants in each suit respectively), and concluded as follows: "Now, if the said C. H. Albers Commission Co. shall abide by the decision which shall be made thereon, and pay all sums of money, damages and costs that shall be adjudged against it if the injunction or restraining

order be dissolved, then the above obligation to be void, otherwise to be and remain in full force and virtue.''

Subsequently, by consent of parties and order of court entered thereon, the five suits were consolidated. That order was made effective and on all after steps the cases were treated as one case.

Before that certain of defendants filed their joint motion to dissolve the temporary injunction and certain other defendants, to-wit, The Merchants' Exchange, its directors and officers, and The National Bank of Commerce, also filed their separate motions to dissolve.

Subsequently, in due course, those motions were taken up and heard—evidence going in in great volume. The temporary injunctions in all the cases were dissolved on that hearing and the motions sustained. Thereupon, the corporate appellant filed its motion to set aside the order dissolving the temporary injunctions. Subsequently, that motion was overruled and an appeal was taken to this court from the adverse ruling and order then made. In this court the order refusing to set aside the order dissolving the injunctions was affirmed. [Albers v. Spencer, 205 Mo. 105. *Quod vide.*] It appears from that case that at the time of dissolving the injunctions the chancellor did not dismiss the bills for the reason that other than injunctive relief was sought. It appears further that he refused to make an order continuing the injunction in force pending the appeal.

Going back a little. At the same term the injunctions were dissolved, The National Bank of Commerce filed its motion to assess damages against the obligors on the injunction bonds, claiming for attorneys' fees and the other charges and expenses in and about the dissolution of the injunctions, the sum of one hundred dollars. On the same day The Merchants' Exchange filed its motion for the assessment of

damages in like amount on the same items. On the next day Spencer and Milliken filed their like motion, claiming damages on two items, viz., $400 for interest on $37,000 (the margin deposits) during the life of the injunction, to-wit, from January 7, 1904, to that date, and $3500 for reasonable fees and charges of their attorneys and counsel and for other charges and expenses incurred in and about procuring the dissolution of the injunctions.

Subsequently, in May, 1904, the court sustained a motion postponing the hearing on the "merits." On the strength of that order nothing further was done with the consolidated case on its merits, but it stood in abeyance awaiting our decision of the appeal.

Subsequently, on the 13th of June, 1907, our mandate of affirmance went down, and thereafter, on July 9, 1907, at the June term of the court all the defendants except The Merchants' Exchange, its directors and officers, and The National Bank of Commerce, filed their supplemental motion to assess damages. That motion reads:

"And now come defendants, Harlow B. Spencer and Mary E. Spencer, executors of Corwin H. Spencer, and John T. Milliken, and all other defendants except the Merchants' Exchange and the National Bank of Commerce in St. Louis, by Judson & Green, their attorneys, and suggest to the court that by reason of the wrongful suing out of the injunctions in the above-entitled cause, and by reason of perpetuating the same through and by means of an appeal to the Supreme Court, and in the giving of the *supersedeas* bond, these defendants have sustained damages, in addition to the amount set out in their original motion filed herein at the term at which the judgment and decree of the circuit court of the city of St. Louis was entered in said cause, in a larger amount, to-wit, in the sum of $11,750, in the manner and for the causes following, to-wit:

"First: That defendants have been compelled to pay, and have paid out and expended divers sums of money, to-wit, $3,750 for the reasonable fees and charges of their attorneys and counsel and for the printing of briefs and abstracts, and for other charges and expenses incurred in and about procuring the affirmance of the judgment and decree of the circuit court of the city of St. Louis and the final dissolution of the injunction granted in said cause.

"Second: That defendants have lost the interest upon the sum of $37,000 since January 7th, 1904, amounting to the sum of $8,000.

"That by reason of the said premises, these defendants have sustained damages in the total sum of $11,750, which said damages remain wholly unpaid to defendants.

"Wherefore, defendants pray that said damages may be assessed to them against plaintiff herein, and that judgment be entered therefor in their favor for said sums."

Thereafter, the corporate appellant filed its motion to strike from the files the first motion to assess damages filed by Spencer and Milliken in 1904, this on the grounds that said first motion has been superseded and replaced by the later motion by the same parties, and was premature and out of order prior to a final decree in the case. That motion was overruled. And exceptions were saved in a term bill. Subsequently, the corporate appellant filed what its learned counsel denominated an answer, viz.:

"The undersigned, plaintiff, by its attorneys, appearing specially and only for the purposes of this answer and for no other purpose, say:

"1. That there is a defect of parties movent in said motion for damages, as all obligees in the injunction bond are not parties to said motion for damages;

"2. That said motion is premature and not en-

titled to be heard as yet, because said cause had not been finally determined;

"3. That said undersigned deny generally each and every allegation of said motion."

Thereafter, at a subsequent term, the motions to assess damages in favor of Milliken and the executors of Corwin H. Spencer, deceased, came on for hearing, and, on the evidence educed, the court rendered judgment on the several bonds in the gross amount hereinbefore stated, viz., $10,867.11, distributed, as to items, as follows: For interest (on the deposit of margins) $6,288.92; expenses, $78.19; attorneys' fees, $4500, which amounts were further distributed *pro rata* to the several bonds.

Thereupon the Albers Commission Company and its two sureties on its bonds, Albers and Vogelsang, filed their motion for a new trial, and, the same being overruled, appealed.

The bill of exceptions shows that appellant excepted to the hearing because there had been no final disposition of the causes on the "merits." It seems, from the argument of counsel preserved in the bill of exceptions, that a motion to dismiss the cases had been filed after our mandate went down, but that motion had not been disposed of. The court overruled the objection to proceeding in the assessment of damages prior to a disposition of the equity cases on their "merits," and an exception was saved to that ruling.

The injunction bonds were put in evidence and thereupon appellant interposed an objection that the movents in the motions for damages were only a part of the obligees in the bonds, and, further, that the motions do not state facts sufficient to warrant the assessment of damages. That objection was overruled, appellant excepting.

Thereupon evidence went in directed to the amount of damages. It need not be set forth. Briefly,

236 Sup.—40

it may be said that it sustained the findings *nisi,* provided the right measure of damages' was adopted. Respondents were allowed to show attorneys' fees and expenses in this court on the appeal, and, after appeal, the services of counsel in trying to get the Merchants' Exchange to release the deposits; also the amount of interest on the deposit of margins from the date of that appeal up to the date of the trial on the motions—all this over objection and exception saved.

It appears that after the injunctions were dissolved, respondents applied to the Merchants' Exchange to have the certificates of deposit of margins indorsed over to them in accordance with the rules of the Merchants' Exchange; further, that the Albers Commission Company protested against such indorsement pending the appeal. After a hearing on this application and protest, the Merchants' Exchange refused to make the indorsement, and the deposit remained with the Bank of Commerce pending the appeal. Its refusal is evidenced by the following entry:

"That inasmuch as the petitions of Thos. Akin, John Mullally Commission Co., Sherry-Bacon Grain Co., W. A. Gardner & Co., and Ballard-Messmore & Co., requesting the release of marginal deposits are in conflict with the spirit of section 6 of Rule VII, and for the further reason that the matter is in court and undetermined, the board of directors refuse to grant the relief asked for."

Subsequently, on our mandate going down, viz., on July 22, 1907, on application, citation and hearing, the board of directors of the Exchange ordered the certificates of deposit indorsed over to respondents, and this appeal may proceed on the theory the indorsement was made and the funds released and paid over to respondents.

Instructions were asked and given for respondents in accordance with the views expressed by the

court in its said rulings. To reproduce them would avail nothing in determining material issues on this appeal.

Any other facts necessary to a disposition of vital questions made in briefs will appear in the course of the opinion.

The main questions are: Did the court err,

(a). In allowing damages for services of counsel in proceedings on appeal in this court in defending the order refusing to set aside the order of dissolution?

(b). In allowing damages for interest on the deposit of margins after the dissolution and after refusing to make an order continuing the injunctions in force pending the appeal?

There are certain subsidiary questions relating to practice, viz.:

(c). Did the court err in hearing the motions to assess damages prior to a disposition of the consolidated case on its "merits?"

(d). And err in refusing to strike out the first motion of respondents to assess damages (and herein of permitting two motions to assess damages by the same movents)?

(e). And err in assessing damages in favor of some of the obligees on the bond when other obligees were not moving in the matter (and herein of disposing of motions of respondents and leaving other motions to assess damages undisposed of)?

(f). It was contended below that the motions did not state facts sufficient to invoke the jurisdiction of the court in assessing damages. An adverse ruling on appellant's contention was made and a question is here in that behalf.

On those questions we rule as follows:

I. Of the allowance of counsel fees on appeal from the dissolution of the injunction.

(1). We may profitably remind ourselves at the outset of some general propositions serving as premises upon which to base conclusions on the concrete question in hand.

*First.* It must be taken as accepted law in this jurisdiction, that (whatever doubt may have existed at one time on the subject) neither a decree for an injunction nor one dissolving an injunction is suspended by an appeal. [State ex rel. v. Dillon, 96 Mo. 56; Teasdale v. Jones, 40 Mo. App. 1. c. 250; Neiser v. Thomas, 46 Mo. App. 47; State ex rel. v. Dearing, 180 Mo. 1. c. 69.] "Neither an injunction nor a decree dissolving an injunction is reversed or nullified by an appeal or writ of error before the cause is heard in this court." (Per WAITE, C. J., quoting from the Slaughter-House cases, in Leonard v. Ozark Land Co., 115 U. S. 1. c. 468.) A bond for an appeal, operating as a mere *supersedeas* on cost, etc., does not have the effect to revive an injunction dissolved below. Unless the trial chancellor order the continuance of the injunction pending the appeal, on terms fixed as the price of such order, the injunction is not continued. [Hovey v. McDonald, 109 U. S 150.] Such is also the doctrine of this court. [State ex rel. v. Dearing, supra.] In that case it was ruled on authority and on the reason of the thing, that the circuit court had the inherent power as a court of equity to make an order continuing an injunction in force pending an appeal and that in many cases it was proper for the court to exercise that power.

Applying the doctrine announced to our case, we find there was the usual bond given for an appeal in the dissolution matter, but also find that the court exercised its discretion, wisely, too, to refuse on request to make an order continuing the injunction in force pending the appeal. On the significance of that refusal we make these observations: Obviously if it had made the order, the question of allowing attor-

neys' fees for services in this court on that apppeal would have assumed another phase and presented a question easy of determination. In such case those services would have been necessary to get rid of a live injunction. While it is true the defunct injunction might have been revived by our order reversing the order appealed·from, yet, pending that appeal, it was none the less dead and inoperative to all legal intents and purposes. There was a mere chance of having a defunct one re-established as a "going concern," and the services of respondents' counsel in this court were successfully directed against the happening of such contingency.

*Secondly.* Whether the injunction in this case was the life of the bills or ancillary to their main purpose, we need not inquire or decide. That question belongs with the merits of the main case when such merits reach an appellate court. However that be, injunction bonds were essential conditions precedent to temporary writs of injunction in the consolidated case. Therefore, the bonds, in one sense, were the causes of the writs. Now the writs, the restraining orders, were the cause of the damages, if any. To this condition of things the maxim applies: The cause of a cause is the cause of the effect—*effect,* being interpreted, means here the damages. Hence there is nothing inequitable or unjust in holding bondsmen liable for those damages, and that is exactly what the bond was given for and the law allows; withal, proceeding in doing so on the theory that, as the main suit, the injunction and the bond are in equity, equitable principles will be levied on to guide a court in ascertaining the damages. Mindful, moreover, that the statute permits a jury, thus treating the matter as at law, and, further (in the latter view of it), that it is good and stiff doctrine that liability on a bond cannot be stretched by implication beyond its terms and its statutory office, the statute being read into such statutory

bond when that can be done without doing violence to its terms or corroding its bowels. [Henry County v. Salmon, 201 Mo. l. c. 162 *et seq.*] A bond on which a temporary injunction issues is conditioned by the statute (Sec. 2522, R. S. 1909) "that the plaintiff will abide the decision which shall be made thereon, and pay all sums of money, damages and costs that shall be adjudged against him if the injunction shall be dissolved." Such were the bonds here.

*Thirdly.* Assessments of damages on the dissolution of injunctions arise under such a variety of divergent circumstances that lively concern must be exercised not to apply mechanically the language used in one decision on one state of facts to another case of dissimilar facts. It must be conceded, furthermore, that the cases are not in harmony. Where they arise in other jurisdictions any note of discordance with our own may frequently be explained away by the fact that those cases take color from statutes differing in detail from our own, so some apparent discords in our own cases may be explained by changes in our statutes.

Not unmindful of the foregoing, it may be stated as good and acceptable general doctrine that compensation for losses sustained by a defendant which are the actual, natural and proximate result of the wrong committed by the restraining order, while the latter is alive and operative, is the measure of damages to be assessed against bondsmen. Says High [2 High on Inj. (4 Ed.), sec. 1663]: "In estimating damages sustained by the improper issuing of an injunction, the courts proceed upon equitable grounds, and while it is difficult to fix any precise rule or standard for determining the damages upon dissolution, it may be said generally that nothing will be allowed which is not the actual, natural and proximate result of the wrong committed. . . . In other words, the liability upon the injunction bond is limited to such damages

as arise from the suspension or invasion of vested legal rights by the injunction. . . . And the only damages which can be recovered are such as arise from the operation of the injunction itself, and not such as are occasioned by the suit independent of the injunction.''

Although stated in different cases in different ways, yet the sum and gist of the matter is that the rule laid down by High is our rule. [Holloway v. Holloway, 103 Mo. 274; Alliance Trust Co. v. Stewart, 115 Mo. 236.]

It is universally held that defendant's attorneys' fees for services in and about legal proceedings leveled at getting rid of an injunction, and releasing defendant from the restrictions of the restraining order, are to be taken into account in estimating his damages. ''The principle upon which counsel fees are allowed, upon dissolution of an injunction, does not rest upon a supposed increase of trial expenses created by the injunction. It is based upon the fact that defendant has been compelled to employ aid in getting rid of an unjust restriction forced upon him by the act of the plaintiff. (Per LEWIS, J., in Buford v. Packet Co., 3 Mo. App. 159.)

Taking the foregoing propositions as sound, we pass to a closer view of the point in hand.

(3) We are of opinion that the restraining orders were not the proximate and natural cause of the services of defendant's attorneys in the Supreme Court, hence the bondsmen are not liable for their value. This because:

It must be borne steadily in mind that under our system, as a general rule, there is no obligation on the part of one litigant to pay the attorney fees of another. Borrowing (and expanding a little) a homely adage: In law those who dance pay the fiddler. The exception to that rule in injunction proceedings flows from the existence and operative force of restraining

orders, wrongfully obtained, interfering with defendants' rights. When those orders were lifted below, as they were in this case, the reason of the exception no longer operated in favor of subsequent services of counsel; for the maxim runs: *Cessante ratione legis, cessat ipsa lex.*

It could not be soundly contended that services of counsel directed to resisting an application for a temporary injunction could be assessed as damages on the bond. The damages caused by the injunction must follow and cannot precede it. [Sturgis v. Knapp, 33 Vt. l. c. 527, *et seq.*]

By much the same token, legal services in undertaking to prevent the re-establishment of a dissolved injunction, ought not to be allowed against the bond; for during the appeal (with no order, *nisi*, continuing the injunction in force) the case stands as if there was no injunction at all. It has been so ruled in Iowa. [Ellwood Manfg. Co. v. Rankin, 70 Iowa 403.] That was a case in which plaintiffs appealed from an order dissolving a temporary injunction. That order was affirmed above on appeal, and defendants, on subsequent assessment of damages, asked for counsel fees for services in the Supreme Court on that appeal. We may quote briefly, thus: "It is said, however, that if, on an appeal, the order had been reversed, the injunction would have been restored; and so the services rendered in resisting a reversal were as necessary, and of the same kind, as those rendered directly in procuring a dissolution. But this is not quite correct. The injunction dissolved was a mere temporary injunction. Strictly, it could not be restored. Another might be granted if the case had not proceeded to hearing, and if the granting of another temporary injunction would be of any use, but that, we think, is all that could be properly said." Accordingly it was held that such fees were not elements of allowable damages against bondsmen. Barre Water Co. v.

Carnes, 68 Vt. 23, is darkly penned, but its trend, *arguendo,* lies in the same way.

Teasdale v. Jones, 40 Mo. App. 243, decided by the Kansas City Court of Appeals, is in point. There expenses of defendant in the appellate court, on the appeal of plaintiff from the judgment dissolving an injunction, were asked as damages on his bond. After announcing the law to be that an appeal does not keep life in, or revive, the injunction order, so as to keep it in force pending the appeal, that court says: "Any element of damages, then, coming from the costs or expenses of the injunction suit, *after* the final judgment in the circuit court, has no place in the judgment on this motion."

In Neiser v. Thomas, 46 Mo. App. 47, the St. Louis Court of Appeals came to the same conclusion. In that case ROMBAUER, P. J., spoke for his learned brethren, THOMPSON and BRIGGS. As a premise, he learnedly discussed the question whether plaintiff's appeal from a judgment dissolving an injunction kept a temporary injunction in force—at that time a vexed one. Having come to the reasoned conclusion that the injunction was not in force pending an appeal, it was ruled, as of course, that such conclusion precludes the right to assess as damages the value of services of counsel in the appellate court on an appeal from a dissolution.

In Helmkampf v. Wood, 85 Mo. App. 227, an instruction was asked by plaintiff that attorneys' fees for resisting the issue of a temporary injunction by the probate court should not be considered an element of damages against the bond. That instruction was refused below, and the refusal was sustained on appeal, but, observe, solely on the ground that plaintiff got another instruction in which the court expressly declared that such attorneys' fees only "as pertain to the dissolution of the temporary injunction could be allowed." In that case, too, it appeared that the

testimony was limited to work done in securing the dissolution of such injunction. We may say, in passing, that the reporter's headnotes to that case are quite unfortunate. They announce that attorney's fees in attending the hearing of, and resisting the *application* for, a temporary injunction are elements of damages on an assessment against the bond. The case does not so hold.

High (2 High on Inj. [4 Ed.], sec. 1687) adopts the view we have announced. In speaking to the point, he says: "But the fees should be limited to services in procuring a dissolution in the court below, and should not include services upon an appeal after the dissolution of the injunction."

Cases may be found taking another view, but under our statutes we think the Teasdale and Neiser cases, *supra,* assert sound and equitable conclusions.

Cases relating to partition, attachment, divorce and other suits where attorneys' fees are allowable on appeal, on due and timely application, are readily distinguishable in principle from injunction suits where the damages are assessed against bondsmen and where the terms and objects of the bond, as interpreted by courts, guide and limit the range of damages as to counsel fees to the actual lifetime of the restraining order and to services in lifting that order by dissolving the injunction; thereby barring out fees for services in resisting the issue of the temporary writ, on the one hand, and fees for services in resisting the reestablishment of a dissolved and defunct injunction, on the other.

We rule the point against respondents, and this ruling necessitates a reversal of the judgment; because the testimony gives no data by which we can safely and certainly estimate allowable fees, and separate them from the erroneous mass. That can only be done below on a new hearing wherein the testimony is limited to proper elements of damages, for the leaven

of error now leavens all the meal of the record in that behalf.

II. Of interest on the marginal deposit pending appeal.

The first motion filed to assess damages for interest confined that item to interest on the marginal deposit from the date of the restraining orders to the date those orders were lifted below. The supplemental motion demands interest from that date to the date our mandate of affirmance went down. In estimating the damages the court took defendants' view of the matter. That ruling was consistent with its ruling on the question of counsel fees on appeal, but was obviously erroneous on the reasoning of the first paragraph of this opinion.

There is an averment in the supplemental motion throwing a dry light on the theory of defendants' learned counsel, viz.: "And now come defendants . . . by Judson & Green, their attorneys, and suggest to the court that by reason of the wrongful suing out of the injunctions in the above entitled cause, *and by reason of perpetuating the same through and by means of an appeal to the Supreme Court, and in the giving of the supersedeas bond,* these defendants have sustained damages," etc. Evidently, they moved (and persuaded the court to move) on the fallacious assumption, that the temporary injunctions were perpetuated by the appeal and the *supersedeas.* Such was the foundation on which the superstructure of damages was built. With that foundation exploded, the superstructure falls. The restraining orders were not perpetuated by the appeal. So far as restrictive on defendants' rights, they were, after the order of dissolution, as if they had never been. The legal tether that bound defendants so they could not lay their hands on the deposits was cut and they were as free to pocket them as they were before the tem-

porary restraining orders were laid tying their hands. The retention of those funds by the bank, and the refusal of the Exchange thereafter to indorse the certificates of deposit, cannot be laid at the door of the bondsmen as a natural, proximate and actual result of the wrong committed by the restraining orders; for, at most, the only force left to exploded orders was the mere "scent of the roses" lingering about a broken vase.

We rule the allowance of interest from the date the injunctions were dissolved to the date our mandate went down was erroneous.

The testimony is here by which we could prune off the dead limb of excessive damages for interest from the main stem of proper damages, and we would do so if that would dispose of the case. But as it must go down for a new hearing, we will not make two bites of a cherry. Let the trial court make the calculation.

Before leaving the question we make the further observations. We have not overlooked the contention of counsel that appellants are estopped to claim that the restraining orders were not operative to prevent the funds being turned over. That contention arises on the following premises: After the appeal the respondents here applied to the Exchange to have the certificates indorsed over to Milliken and Spencer as the fruits of their victory, in accordance with its rules. The plaintiff in the consolidated suit, cited to appear before the Exchange directors to show cause, appeared and showed "cause"—such as it had. We infer counsel on both sides argued the question before said directors, with learning and zeal. In a nutshell counsel for plaintiff, *inter alia,* contended that the restraining orders were still in force by virtue of the appeal and *supersedeas,* precisely as counsel for defendants in their supplemental motion to assess damages now contend for the same thing. Counsel for defendants argued *contra* at that time. (Wherefrom, turn

about being fair play, a swap of position appears.) If plaintiff's argument was effective before the Exchange, the result was unfortunate. But we do not know whether it was effective or not, nor is it material. In dealing with the liability of sureties on a bond we are not to allow damages against them because of the quality of the logic or the persuasiveness of the rhetoric of counsel. It is not so written in the bond; for those damages, if any, spring as the result of a live restraining order issued by a court on the application of plaintiff, not otherwise. But the order of the Exchange (*quod vide*) does not put its refusal, *in toto,* on the opposition of counsel, but partly upon the fact that the application for the release of the funds was in conflict with the spirit of a certain section of a certain rule of the Exchange. Moreover, orders of the Exchange, however potent and binding on its members, do not rise to the dignity of a restraining order of a court of equity upon which damages may be predicated against bondsmen on a bond exacted by such court, when finally determined to be wrongfully made.

Finally, the issue of estoppel was not raised below by any pleadings. So, there seem to have been two estoppels—one of record in a court of justice whereby all parties were estopped to say that the restraining orders were still in force, and the other arising on the order of the directors of the Exchange squinting *contra.* An ancient rule is: Estoppel against estoppel setteth the matter at large. We do not invoke that rule, but another, namely: The estoppels are not of equal dignity, and the greater force and efficacy, if any be considered, should be allowed to that springing from the majesty of the law itself. By force of the latter there were no restraining orders in force and no order of an Exchange can estop its superior operative force. The point is ruled against respondents.

This brings us to subsidiary questions of practice.

III. Was the hearing on the motions to assess damages premature—*i. e.,* should the hearing have been postponed until the consolidated case was disposed of on its "merits?"

Cases may be found taking that view, but circumspection must be used to see to it that the doctrine of those cases is not applied automatically since the change in our statute relating to appeals from certain interlocutory orders. Broadly stated, the right to an appeal once sprang into existence only on a "final judgment." When our statutes ran that way, an appeal from an order refusing to revoke an order dissolving an injunction did not lie, but the whole matter came up for review on final judgment if due steps were taken to preserve motions and exceptions. Under that state of law, authority may be found for the proposition that an assessment of damages could not proceed prior to a final decree on the merits. This because on such final decree the chancellor could change his mind, and, the matter of injunction or no injunction being yet in his bosom, could determine that plaintiff was entitled to one despite his prior interlocutory order to the contrary—in which event no damages were assessable against the bondsmen.

In 1891 (Laws 1891, p. 70) the statute was changed by repealing the old and enacting a new law. The act then passed (later modified by amendments, immaterial here) appears as section 2038, Revised Statutes 1909. By that statute a party aggrieved by any judgment of a circuit court in a civil cause, from which an appeal is not prohibited by the Constitution, may take his appeal from any order granting a new trial or in arrest of judgment, or from any order refusing to revoke, modify or change an interlocutory order dissolving an injunction, or from interlocutory judgments in partition determining the rights of parties, or from any special order after final judgment in the cause as well as from any final judgment

in the case. After so ordaining, the section reads in part: "But a *failure* to appeal from any action or decision of the court before final judgment *shall not prejudice* the right of the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in the case." That statute made vital changes in the old procedure and necessarily affects the learning on questions arising under the old law. For instance:

In Padgett v. Smith, 206 Mo. 303, there had been an appeal from an interlocutory judgment in partition (205 Mo. 122). Affirmance in this court followed. Thereafter when the case went down for further proceedings an attempt was made by defendant to have a reconsideration of questions determined on the former appeal. Presently, the case came here on a second appeal, and such questions were exploited in briefs. If we stand by the doctrine of that case, we see no escape from the conclusion that it settles the proposition that the trial court must proceed, when the case goes down after an appeal from an interlocutory judgment dissolving an injunction, on the theory that the right to a temporary injunction stands foreclosed by the affirmance in the upper court of the order, *nisi*, refusing to revoke. That case may speak briefly for itself, thus:

"Appellant was not compelled to appeal from the interlocutory judgment. Section 806, Revised Statutes 1899, provides that: . . . 'but a failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in the case.' He had the option to sit tight, save his exceptions by a term bill, await the final judgment, and bring the whole case here for review. [Richardson v. Schuyler County Agricultural & Mechanical Association, 156 Mo. 407.] But this appellant did not avail himself of

that option. To the contrary, he exercised his right of appeal from the interlocutory judgment. The statute says 'a *failure* to appeal' shall not prejudice his right to have the action of the trial court reviewed on an appeal taken from the final judgment. But what if there is no failure to appeal? It does not say that if he does appeal from the interlocutory judgment he has two strings to his bow, viz., the right to have the action of the trial court reviewed on that appeal and the further right to have it again reviewed on a second appeal. The maxim, *expressio unius est exclusio alterius*, applies to such condition of things—that is, if he does not appeal he shall not be prejudiced in an after review; but if he does appeal he is prejudiced on the second appeal. No good reason can be given why an appellant in the special instances mentioned in section 806, supra, should have two appeals covering the same identical grounds of review. The statute never was intended to give one class of appellants so singular and unnecessary an advantage over appellants in other cases. One appeal on the same matter is enough, and to hold otherwise would be out of harmony with the common sense of the thing.''

It would be out of line with orderly procedure to allow the trial court, on a hearing of the trial on the "merits," to put fire into the coal of an interlocutory injunction which had been solemnly declared a dead coal by the upper court on appeal. We do not mean that on a final hearing, if there were any real merits left to be determined after we were through with the interlocutory appeal, the trial court might not grant an injunction on such merits. It is hard to see how the occasion for one would arise or what it could affect. But evidently it would not be the same injunction theretofore adjudged improperly issued, once in force and now defunct. At most it would be a new one standing on its own legs and operating only on an

existing status of things, not retroactively. [Ellwood Mfg. Co. v. Rankin, 70 Iowa 403.]

The premises considered, we hold it was not necessary to await the final determination of the consolidated case on its "merits." The right to a temporary injunction had passed into a thing adjudicated adversely to plaintiff, when we affirmed the judgment of dissolution on the first appeal. The damages had accrued while the injunction was wrongfully in force, and an assessment was in order when our mandate of affirmance went down. We rule the point against appellants. It is not likely to arise again, since counsel contend that the bill had been dismissed pending this appeal.

IV. Of error in refusing to strike out the first motion to assess damages.

The first motion was filed in accordance with allowable practice at once upon the dissolution of the injunction below. It remained in abeyance pending the appeal from the dissolution in accordance with correct practice. [See authorities in briefs.]

If the motion to strike out had been directed against the supplemental motion, we would have had a different case before us under the rulings in paragraphs one and two of this opinion disallowing damages pending appeal.

There was no error in ruling on the motion to strike out; and, since we have held the damages claimed by the supplemental motion were not the actual, natural and proximate result of the restraining orders, the second motion is not of substance. It amounted to nothing, in law, and its mere presence in the files affects the merits not a whit. When the cause goes down it can be withdrawn, if counsel elect to take that course.

V. Of error in assessing damages in favor of some of the obligees in the injunction bonds when other obligees were not parties to the motion considered.

On the theory that motions to assess damages are, in effect, counter-suits on the bond and are governed by like principles, appellants contend that all the obligees were necessary parties to the motions. Further, that as some of the motions were not heard, but remained in abeyance and behind, and as the judgment did not cover the claims of all the obligees, there could be no judgment against the bondsmen in favor of Milliken and Spencer. They rely on Ryan v. Riddle, 78 Mo. 521, to sustain the latter contention.

This opinion is already too long and will not be swelled by investigating whether our statutes are the same as when the Ryan case was decided, or whether our later decisions may or may not have modified its drastic doctrine. We content ourselves with ruling that in injunction bonds, where the restraining orders issued to several parties whose interests are obviously several, some of whom may have no substantial interest, the liability is several and parties having several interests may proceed by motion separately, and if some refuse to proceed, others to whom damages accrue are not precluded by such refusal.

In Sturgis v. Knapp, 33 Vt. 487, supra, it was ruled that where the damages to the different parties enjoined were clearly several the injunction bond will be held to be several though its language would in ordinary cases indicate merely an obligation to the defendants jointly.

We think that course, following the Sturgis case, more likely to result in justice in administering the law between man and man. Suppose all the obligees would not join? Or suppose some of the obligees through indifference, malice or favor to the principal

or sureties refused to proceed? Or suppose one of the obligees released the obligation? Or suppose a friendly party was made an obligee for the purpose of loading mischief in the bowels of the bond against a rainy day—what then? Under the Ryan case they could not be made codefendants, a release by one ends liability, and a wrong would be inflicted, by means of a bond exacted by the very law itself, which, on such theory, could not be remedied by the law—an abhorrent result.

The Sturgis case was ruled on the authority of 1 Parsons on Contracts. There was an earlier case in that court, Sharp v. Conkling, 16 Vt. 355, in point. That case and the doctrine of Professor Parsons were before the court in Cross v. Williams, 72 Mo. 577 (q. v.). We followed the Sharp case and the doctrine of Parsons in the Cross case, which doctrine, pressed to its logical conclusion, sustains the ruling in the Sturgis case. [See *arguendo*, Bush v. Haeussler, 26 Mo. App. l. c. 272, *et seq.;* Churchill v. Lammers, 60 Mo. App. l. c. 252, *et seq.*]

In injunction suits the bondsmen are in court without further notice (Nolan v. Johns, 108 Mo. l. c. 436-7), to answer for its breach and respond to damages. Many cases might be cited to show that the practice in this jurisdiction tolerates motions by the obligees severally. For example:

In Loehner v. Hill, 17 Mo. App. l. c. 34, there were two motions filed for the allowance of damages against the injunction bond. The court considered them on their merits and made an assessment on one and denied the other.

In Helmkampf v. Wood, 85 Mo. App. 227, the exact point was in judgment. In that case it was pointed out that our statute now allows damages occasioned by the injunction, not only to the parties enjoined, but ''to any party interested in the subject-matter of the controversy.'' [Sec. 2522, R. S. 1909.] It was held

that as the quoted matter was an amendment to the statute some of the case learning on the clause prior to that amendment was no longer applicable, and it was pointed out that in Nolan v. Johns, supra, and Fears v. Riley, 147 Mo. 453, the right of any injured party to have his several damages separately ascertained was recognized, although not discussed. [See a very late case, *arguendo*, North St. Louis Planing Mill Co. v. Christophel, 137 S. W. l. c. 298, where it is held that though different obligees are joined in one bond, the bond will be held several and they may sue separately if the bond be given to secure separate and distinct rights.]

In Sutliff v. Montgomery, 115 Mo. App. 592, there were several defendants. It seems that only one, Montgomery, filed a motion to assess damages on the dissolution, the other did not join in that motion. In that case a point was made the antithesis of the one made here, viz., that the motion included and was in favor of defendants having no interest in the damages. The court held that as the motion was filed in the name of Montgomery only, the erroneous inclusion of the names of the other defendants by the clerk was not error (p. 597).

In Cohn v. Lehman, 93 Mo. 574, W. S. Cohn, one of the defendants in an unsuccessful injunction suit, sued on the bond. Eminent counsel appeared on both sides and the point was not raised.

The separate motions to assess damages in favor of the bank and the Merchants' Exchange remained in abeyance. An attempt is made to show us, by way of an additional abstract, that those motions are abandoned or that the damage has been liquidated. If this be so, those motions can be disposed of before another hearing, when the case goes down, or they can be taken up jointly with the principal motion and the damages assessed in one proceeding. That would be the better practice because thereby the court controls

the damages with one stroke and keeps them within the penal sums prescribed in the bonds.

We rule the point against appellants.

VI. Finally it is argued that the motions did not state a cause of action.

It is not the intendment of the statute that motions should be framed with the particularity of suits on the bond. So long as the grounds stated in the motions cover the elements of damages asked with reasonable precision, they are sufficient. Such is the case here. The point is disallowed.

The premises considered, the judgment is reversed and the cause remanded to be proceeded with in accordance with this opinion. All concur.