# MARCH, 1936.

IN THE MATTER OF CHARLES P. NOELL.—96 S. W. (2d) 213.

St. Louis Court of Appeals. Opinion filed June 16, 1936.

Report of Special Commissioner adopted as opinion of the Court June 30, 1936.

Writ of Certiorari denied November 10, 1936.

*Geo. F. Wise* and *Luther Ely Smith* for informants.

*P. H. Cullen* for respondent.

No briefs.

DYER, S. C.—To the St. Louis Court of Appeals:

Pursuant to the appointment made in the above entitled matter by said court on June 5, 1935, the undersigned Bernard H. Dyer, as special commissioner, submits the following report:

This is an original proceeding, instituted in this court, the object of which is to discipline the respondent, Charles P. Noell, as an attorney at law and to disbar him from the practice of law in this State.

This proceeding was commenced on the 7th day of February, 1935. On that day, Thomas F. McDonald, Wayne Ely, Grover C. Sibley, Howard G. Cook and Samuel H. Liberman, duly licensed attorneys at law and members of the bar of the City of St. Louis, representing themselves to be the Committee on Grievances of the Bar Association of St. Louis, as informants to the court, filed herein their information, or petition for disbarment.

This petition states that respondent Charles P. Noell is, and at all times mentioned, was, a duly licensed attorney at law, engaged in the practice of his profession as such attorney at law in the courts of this State.

That during the years 1922 to 1925, inclusive, respondent paid large sums of money to persons employed by various corporations for information about persons, injuries sustained by employees of said corporations in order to enable respondent to approach such injured employees to solicit them to employ respondent to bring suits in their behalf against their employers for damages; that respondent did solicit many persons to employ him to file suits against their employers, and as a result of such solicitation, a large number of such employees did so employ respondent, and respondent did file such suits as their attorney; that respondent paid out approximately thirty-five per cent of his gross income for such purposes, and secured business by such payments; that respondent, during said years, paid money to employee of railroad companies to obtain for him private and confidential records from their employers' offices and information from such private and confidential records for the purpose of being used, and was used, by respondent against various railroads; that said information and said records were so obtained without the knowledge or consent of said employers, and that the giving of such information by said employees to respondent was a violation of their duty to their employers, as respondent well knew.

Informants' petition states that the allegations made in the petition are based upon certain proceedings which took place before the United States Board of Tax Appeals, wherein respondent, Charles P. Noell, as petitioner, was appealing for a deduction from his taxable

income for the years 1922 to 1925, inclusive, and in which proceedings he had filed a certain sworn petition purporting to set forth the allegations made in informants' petition to disbar, and also testified orally to certain statements as a witness in his own behalf, and caused certain oral statements to be made in his behalf by one Brown as his representative, the said sworn petition and much of said oral statements being set out in the information herein. Upon the basis of these allegations (stated with a good deal of repetition and with much argument as to form), informants charge that respondent, Charles P. Noell, was guilty of a misdemeanor and malpractice in his profession as an attorney at law, and also that he had been guilty of the offense of dividing fees with persons not licensed as attorneys at law. The prayer of informants' petition is that respondent be removed from the practice of law in this State.

Respondent's defense to this petition, or information, as disclosed by his answer, is first, a general denial of the allegations of the information; second, a denial of the legal capacity of informants to institute this proceeding; third, a challenge to the sufficiency of the allegations of the information to constitute grounds for disbarment, a demurrer, as it were, to the petition; fourth, a plea of *res adjudicata,* in that charges were preferred against respondent in the Circuit Court of St. Louis in 1924, in which substantially the same charges were made and in which respondent was discharged, and he now pleads said judgment as a bar to the prosecution of this petition; fifth, that the acts complained of are so stale and remote in point of time as to constitute laches, and respondent pleads laches as a bar to this action; sixth, that this action is barred by the Statute of Limitations of this State, without making reference to any specific state of limitations; seventh, that at the period of time mentioned in the petition, and at all times since, respondent has in good faith engaged in the practice of law and has not been guilty of any malpractice, fraud or misdemeanor whatsoever in his professional capacity.

Your commissioner takes up these several specified defenses for consideration in the order in which they are stated.

The evidence offered by the petitioners and by respondent was heard by your commissioner, was taken down by a shorthand reporter appointed for that purpose with the consent of both parties, and this evidence was transcribed and has been printed and filed. At the conclusion of the taking of testimony, oral arguments were made, and it was consented and agreed that briefs might be filed later; and time was allowed for that purpose. These briefs have likewise been printed and filed, and the case was submitted to your commissioner for his findings of fact and conclusions of law upon said evidence, arguments and briefs.

As a pleading, informants' petition contains much argument and

many conclusions, both as to law and fact, and also sets forth matters of evidence, but even if stripped of such matters, it is the view of your commissioner that the petition charges that respondent paid to unnamed persons in the years 1922-1925, inclusive, substantial sums of money for the purpose of obtaining employment as an attorney at law, and thereby did obtain such employment. Informants charge that money was paid by respondent to employees of railroad employers to furnish to respondent private and confidential information from the records belonging to said employers, this information being for the purpose of enabling respondent, and was used by respondent, to procure employment by such injured employees or their dependents to institute law suits against these same railroad employers. As a witness testifying in his own behalf in this case, respondent denied that he ever used money in such ways. Your commissioner considers that the crux of this case turns upon the solution of the issue of fact thus joined. What does the evidence show in that regard?

Respondent had made his return to the Income Tax Division of the Federal Government showing his taxable income for the years 1922 to 1925, inclusive. Thereafter, the Commissioner of Internal Revenue had determined that there was a deficiency in the amount of said income tax for said years, and had issued deficiency letters accordingly, whereby said commissioner had assessed against respondent deficiencies in taxes as follows:

For the year 1922, ...............................$ 581.06
              1923, ................................ 742.26
              1924, ................................ 725.40
              1925, ................................ 261.57

                       Total, ...............$2,310.29

Respondent appealed from this action by the Commissioner of Internal Revenue to the Board of Tax Appeals. This appeal was in writing, signed by respondent's counsel, and sworn to by respondent himself. A hearing upon this appeal was conducted before the Board of Tax Appeals, at St. Louis, Missouri, on April 14, 1930, at which hearing, the respondent Charles P. Noell appeared in his own behalf and was also represented by one James Brown. At this hearing, respondent made statements relative to the issues pending on the Appeal, and after having made such statements, was sworn and testified as a witness in his own behalf. After respondent had testified as a witness, both in chief and upon cross-examination, respondent called upon one James Brown, his said representative to make a statement in his behalf before said Board of Tax Appeals. These statements made by respondent and by Brown, and also the testimony given at this hearing by respondent, were taken by a reporter and a transcript of the whole proceeding was offered by informants in

this disbarment case to support the allegations of the information. Upon the testimony thus offered, informants rested their case.

This transcript of proceedings before the Board of Tax Appeals shows that respondent was attempting to prove that he was entitled to certain deductions from his gross income for the years in question on the ground that said deductions were amounts paid out by the taxpayer (respondent) on account of business expense. The Government was contending that the taxpayer was not entitled to these claimed deductions, on the ground that there was no showing made to the effect (within the Federal Income Tax Law) that the claimed payments were necessary business expenses.

In his formal written appeal in this tax matter, signed by counsel for respondent, and admittedly sworn to by respondent, respondent makes numerous statements of fact, which, if true, show that respondent had, during the years 1922 to 1925, inclusive, paid and used large sums of money to secure his business as an attorney at law. These statements of fact were in form both direct and argumentative. As direct statements, he said, speaking of checks allegedly issued by respondent in payment of business expenses and payable to cash:

"The proceeds were used in connection with the conduct of his business." That some of the proceeds of checks issued and paid to cash "were used in securing business by means of paying persons employed by various corporations against which corporations suits were prosecuted, and it was always necessary to pay such persons in cash."

Argumentative statements were made as follows:

"It requires large sums of money to secure this character of claims.

"To secure the character of legal business in which the taxpayer specializes that it is necessary to spend approximately 35% of the taxpayer's gross income in order to secure such legal business."

Respondent testified in this disbarment proceeding that when he signed the appeal paper from which the foregoing statements are copied, he did not know that the paper he was signing contained said statements; that he signed without reading either the petition for appeal or the separate affidavit in which he declared, upon oath, that he had read the petition, was familiar with the statements therein contained, and that the facts therein stated are true. He testified that the petition for appeal and the affidavit were prepared by his representative, Mr. Brown, who brought it to respondent and being busy, he signed it without reading it; that he thought it was some formal matter, like an affidavit for appeal; that had he read it over and seen the statements that he had spent money paying persons to get business, he would have stopped right there, "because my whole testimony before that tax appeal board was just to the contrary."

If the whole of respondent's testimony before the tax appeal board

had in fact been just to the contrary of these statements of the petition for appeal, your commissioner would feel justified in finding that respondent did not know that contents of the appeal petition, although his affidavit said that he had read it. A careful and considerate reading of the whole of respondent's testimony before the tax appeal board discloses that this testimony was not just to the contrary of said statements. In fact, as read by your commissioner, this testimony, instead of being contrary to said statements, was at least consistent with said statements. That testimony was to the effect that respondent spent the sums of money for which he was claiming deductions from his gross income in connection with his law business. In his opening statement to the Board of Tax Appeals, representing himself, respondent said:

". . . so there has been nothing allowed here in the way of business expenses, . . . and frequently we have to pay employees of railroads for interstate records and things like that, . . . we could not make a record of that because if we did, they might lose their positions with the companies."

As a sworn witness testifying before the Board of Tax Appeals, respondent said:

"The point I want to show by them (cash checks) your Honor, is that here is all of the personal expenses, representing everything in the way of personal and household expenses; that therefore these cash expenses was our method of keeping track of money spent in business.

"I would have no business—would handle no business, if we did not do it by spending large sums of money, as represented by those cash checks, and the persons that has been paid to were many; . . .

". . . I did not dream that these cash checks would not be considered as business expenses, where it was used in that way."

". . . my whole foundation is cash checks necessary to be spent in my business; when I cease to spend it my business ceases; . . ."

It conclusively appears from the oral testimony given by respondent at the hearing before the Board of Tax Appeals that he had spent large sums of money in connection with his law business; that he would have had no business if he had not spent large sums of money; that when he ceased to spend money, his business ceases. Such statements preclude any finding that the testimony given by respondent at the hearing before the Board of Tax Appeals was "just to the contrary" of the statements set forth in the petition for appeal. There is only one respect in which this oral testimony does not exactly coincide with the statements made in the petition for appeal. The oral statements did not distinguish as to whether these large sums of money were spent by respondent to obtain business or were spent by him in the prosecution of the business after it had been otherwise obtained. With the fact established to the satisfaction of your com-

missioner that respondent spent large sum of money in connection with his law business, so established by the testimony of respondent himself given at the hearing on the tax matter, the next step is to determine whether this money, or a part thereof, was spent to obtain business—to obtain cases. Respondent's petition for appeal in the tax matter is specific to the effect that he spent large sums of money securing business. He denies, however, that he made these statements knowingly,—that if he had known that these statements were contained in his petition for appeal he would have stopped right there. Your commissioner sees no other course to pursue in resolving this question of fact but to be guided by the corroborating testimony as that testimony may guide in the one direction or the other.

When respondent found himself confronted with his income tax problem relating to his taxable income for the years 1922-25, inclusive, he employed as his counsel and adviser in that matter one Brown. An appeal to the Board of Tax Appeals was decided upon. Brown prepared the petition for the appeal. It is not to be presumed that in the preparation of this petition, Brown obtained his knowledge of the facts pertinent to the case from any source other than from respondent himself. Neither is there evidence to that effect. Whatever Brown learned about the case submitted to him by respondent, he learned from respondent. There is no evidence that Brown attempted to make a fictitious case. In the light of experience and of all the testimony in the case, we are bound to believe that Brown undertook to present before the Board of Tax Appeals the case, and only the case, which the client had furnished to him. In addition to the statements made in the petition for the tax appeal and in addition to the oral testimony of respondent at the tax hearing, respondent introduced Brown to the Board of Tax Appeals as his representative and called upon him to make a statement in his behalf before the board. Brown undertook to do so. He made a statement before the board in which he said:

"He receives, or rather secures, his business through information received usually from or through an employee of the company and he reciprocates or pays that employee, as a general thing, for receiving that information, in the form of a commission."

Of course, what Brown may have stated in that proceeding is not conclusive upon respondent in this proceeding, and we do not hold respondent bound here by that statement. We do, however, consider what Brown said on that occasion as admissible testimony made in the presence of respondent and strongly corroborating the charge that respondent had spent sums of money to obtain law business. That statement by Brown on that occasion was but an extension of the statement previously made in respondent's petition for appeal and has great weight to show that respondent spent said moneys to obtain law business and also that respondent did have knowledge of the con-

tents of the petition for appeal when he signed the affidavit to the petition declaring therein that he had read the petition and was familiar with its statements.

There are additional matters in this record that support the finding that respondent did know the contents of this petition for appeal. We refer to the obvious contradictions made by respondent. In his testimony before the Board of Tax Appeals, he testified explicitly that he had paid out large sums of money in connection with his law business. On that ground he was claiming that he was entitled to deductions in the amounts of such payments from this gross income. In fact, there was no other purpose of the hearing before the Board of Tax Appeals but to obtain these deductions on that ground.

At the trial of the instant case, respondent testified that the sums of money represented by the cash checks which respondent had testified were used in connection with his law business were in fact used for altogether different purposes—that they were used in ways which did not entitled him to the deductions claimed by him. The admitted position taken by respondent with reference to these cash checks before the Board of Tax Appeals cannot be reconciled with the position taken by him with reference to those same cash checks in this case. Before the Board of Tax Appeals, respondent was contending, and supporting this contention by his own testimony, that he was entitled to deductions as business expenses which, if allowed, would have reduced his income tax by the amount of $2310.29. In the present case, he testified that said moneys were spent for purposes that obviously did not entitle him to these reductions. He now says that he spent these moneys upon dependents and upon pleasure. When testifying before the Board of Tax Appeals, the attempted showing was that these large amounts of money, in their entirety, were paid in connection with respondent's law business. In this hearing, it is attempted to be shown that the same large amounts of money, excepting a trifling portion thereof, were paid out in support of dependents and upon pleasure. What your commissioner believes and finds from the testimony is that respondent did pay out money at times in support of his dependents but that the averments of his petition for appeal in the tax case that he paid out moneys to obtain and secure law business are true.

It is therefore the finding of your commissioner in this case that respondent, during the years 1922, 1923, 1924 and 1925, was and yet is an attorney at law, duly licensed and admitted to practice and engaged in the practice of his profession as an attorney at law in the courts of this State; that during the said years 1922, 1923, 1924 and 1925, and during each of said years respondent paid to persons unnamed sums of money, in amounts undetermined, for the purpose of obtaining and securing employment as an attorney to institute suits in the courts of this State and elsewhere, and that by the use of

moneys so paid out, respondent did obtain such employment, and acting upon employment so obtained, did institute and prosecute suits in the courts of this State and elsewhere; that by said acts, respondent has been guilty of conduct illegal, improper and unprofessional as an attorney at law, and by said acts and conduct, respondent has been guilty of a misdemetanor and malpractice in his professional capacity, as an attorney at law, within the meaning of section 11707, Revised Statutes of Missouri, 1929.

Respondent's alleged defense that informants in this case had no legal capacity to institute this proceedings seems to have been abandoned by respondent. At least, it is not argued in his brief. But abandoned or not, it appears that this information has been filed by a proper party and that informants are members of a properly organized body of duly licensed attorneys at law, qualified to institute a proceeding of this character. It is common knowledge that such proceedings have been instituted by committees of this character in the courts of this State and have been upheld. In fact, they seem not even to have been questioned.

Respondent contends that rules of court must be held to operate prospectively only. As we understand the recent case In re Sparrow, 90 S. W. (2d) 401, such is not the law in a case of this character, and such cases as Alton v. Register, 248 Mo. 154, cited by respondent, holding that rules made must not be given a retrospective effect by applying them to a case relating to abstracts filed before the adoption of the rule, have no applicability to a disbarment proceeding.

Respondent strenuously insists upon his defense of *res adjudicata*, in that charges were preferred against respondent in the Circuit Court of the City of St. Louis in 1924, in which substantially the same charges were made against respondent as here made, and that he was, upon trial, acquitted in that case. As we understand this contention on the part of respondent, it is that although in the disbarment proceeding referred to no reference was made to the identical expenditures of money to obtain cases as here specified, yet it was a proceeding to disbar respondent in which the whole of his conduct as an attorney at law was an appropriate matter for investigation, and that if the facts here alleged existed at the time, they could have been brought forward, and if not brought forward, they are *nevertheless* as much involved in the judgment rendered at the end of the proceedings as though they had been specifically included. It is argued that the rule against splitting causes of action is applicable here.

If this were a cause of action in the usual or ordinary sense—if it were an adversary proceeding, and if it were shown that the matters in controversy were substantially the same as those which were involved in a previous trial between the parties, then such rule might properly be utilized as a defense in the subsequent proceeding. As

said in the case of In re Sparrow, *supra*, quoting from the case, In re Richards, 333 Mo. 907, 63 S. W. (2d) 672, a disbarment proceeding is not "an action, civil or criminal, but a proceeding *sui generis*, an investigation by the court of the conduct of its officers the object of which is not the punishment of the offender, but the protection of the court." The record of the 1924 case, introduced in evidence in this case, was not an investigation of the same matters as are under investigation here, and we feel bound to hold, as we do hold, that this investigation was not foreclosed by the proceeding of 1924. There was no splitting of a cause of action. Moreover, it is shown that at least some of the acts covered by the present investigation did not exist at the filing of the disbarment proceeding of 1924. So much of respondent's acts and conduct here under investigation as transpired in the year 1925 was subsequent in point of time to the matters referred to in the proceedings of 1924.

Respondent further defends on the ground of laches, on the ground that this proceeding was not instituted until a time so remote from the dates of the occurrences complained of as that, as a matter of law, this court ought not to entertain the proceeding.

Laches is a doctrine established by Courts of Equity, based upon the idea that if a petitioner has delayed commencement of his cause of action until such time as that the defendant has, by the lapse of time, lost what has been his opportunity to make his defense in the matter complained of, a court of equity as a court of conscience, will not allow the petitioner to prosecute his case and thus take advantage of defendant. Laches is a defense based upon facts. Ordinarily, these facts which would show that defendant had been prevented by lapse of time from producing facts which, if shown, would constitute a defense, should be pleaded in an answer. It could be that facts appear in the face of petitioner's complaint, sufficient to give rise to the application of the doctrine of laches. In such case, a demurrer might suffice. In the case now at hand, respondent relies upon a demurrer in invoking his defense of laches. The instant pleading is denominated an answer, but its legal effect is that of a demurrer. It merely says that the acts complained of were committed in 1922-25 and the petition was not filed until February 7, 1935, "and the charges contained in said petition are so stale and remote in point of time as to constitute laches, and respondent pleads laches as a bar to the prosecution of this action."

We find nothing in this case, either by way of pleading or evidence showing that defendant, by reason of lapse of time, had been prevented from producing in evidence facts which, if produced, would have been a defense to the charges made in the disbarment petition of this case. In such a situation, we find that the defense of laches has no application here.

As to the pleaded defense that this investigation is barred by the

Statute of Limitations, we are directed to no specified Statute of Limitations. As said before, this is not a cause of action in the usual or ordinary sense that one party is seeking some redress in his own behalf against another party. If respondent is in position to defend upon some Statute of Limitations, then it would appear that respondent should be able to point to some date at which such statute started to run. It may be said that the statute started to run when the action accrued. When was that in this case? There is no evidence that informants had knowledge or means of knowledge of respondent's conduct with reference to the expenditure of money to obtain law business concurrently with the transactions themselves. There is one fact beyond gainsaying in the case and that is that respondent in the handling of cash moneys used in obtaining law business intended to leave no footprints behind him. It is plain beyond argument that his method was to use cash checks so that there would be no written record to tell its own story about the particular transactions in which the money was involved. He testified that in the year 1922 he drew checks of this character amounting to $5989; in the year 1923, $9275.35, in the year 1924, $11,780.69; and in the year 1925, $10,984.23. He testified in his tax hearing that he used all this money in his law business; he testified in this case that he used substantially all of this large sum of money in support of family dependents and upon his own pleasure. If used in his law business, as we have found that it was used, we can see what the motive was in using cash checks. That motive was to conceal the identity of the particular transactions. We can find no motive for concealment in the use of cash checks where the proceeds would be used to support family defendants or paying club dues and the like. The informants who instituted this proceeding had no duty to commence this proceeding until they had some knowledge of the facts. So far as this information is concerned, this actions did not accrue until that time. If there be a Statute of Limitations applicable to a case of this character, it could not start to run while the person pleading such statute was using every means at his command to conceal the facts upon which the complaint against him is based. The defense of the Statute of Limitations is disallowed.

Respondent in his brief has cited a number of cases from this and other jurisdictions which refer to the right to practice law as a property right and in which the approach of the courts seems to have been that of protecting a property right. A sample of this type of case is that of In re Sizer and Gardner, 306 Mo. 356. The thought of punishment and property loss weighed heavily with the court on those cases. In the more recent cases, however, it is said that punishment is not the objective in this sort of case.

In the case of In re Sparrow, *supra*, it was contended that a rule of court promulgated after the occurrence of the facts upon which

the disbarment proceeding there involved were based could not be enforced, that to do so would be violative of constitutional provisions in that it would deprive respondent of rights or impose liabilities in respect to transactions already past. In that case, it seems to us that if avested property right had been involved, that is to say, that if a vested property right had been sought to be taken away from the respondent (the right to practice law) or a punishment had been the object of the proceeding, the court in that case would have been bound to uphold the contention. However, the court held that no such matters were involved. The court said:

"There being no punishment involved as for past conduct, in no view can these court rules of procedure offend against our constitutional provision touching *ex post facto* laws."

We hold that this is not a proceeding to test a right of property.

In view of the foregoing findings as to the facts and the law of this case, it is the recommendation of your commissioner that this court enter its judgment suspending respondent, Charles P. Noell, from the practice of law in the courts of this State for a period of two years from the date of the judgment and until the costs of this proceeding be paid.

PER CURIAM:—The foregoing report, finding of facts and conclusions of law of Special Commissioner Honorable BERNARD H. DYER, are adopted as the opinion of this court. The order and judgment of the court is therefore that the license of respondent Charles P. Noell to practice law in the State of Missouri is hereby suspended for a period of two years from this date and until payment has been made of the costs of this proceeding. *Becker* and *McCullen, JJ.,* concur; *Hostetter, P. J.,* not sitting.