TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Appellant, v. JOHN J. SCHMIDT, Executor of the Estate of ERNEST W. ALY, Deceased, and CHARLES P. NOELL.—No. 38935.—182 S. W. (2d) 79.

Division Two, July 3, 1944.

Motion for Rehearing or to Transfer to Banc, Overruled September 5, 1944.

80

*Joseph A. McClain, Jr., Arnot L. Sheppard, Louis A. McKeown* and *Albert E. Schoenbeck* for appellant.

82

*Cox, Blair & Kooreman, Edgar & Matthes* and *Harry S. Rooks* for respondent, John J. Schmidt, Executor.

*Hay and Flanagan* and *Edwin D. Franey* for respondent Charles P. Noell.

BARRETT, C.—Upon the motions of Charles P. Noell and John J. Schmidt, the executor of the estate of Ernest W. Aly, damages in the sum of $14,778.77 were assessed on the Terminal Railroad's injunction bond. The railroad appeals from the allowance and the questions presented are the propriety and size of the awards.

The background of the present litigation is that on October 25, 1929, Ernest W. Aly, a Terminal switchman, was run over by an engine and both legs were cut off above the knees. In January, 1930, he entered into a one-third contingent fee contract with an attorney, Charles P. Noell, and a suit was instituted against the Terminal in which it was claimed that Aly's injuries were caused by the Terminal's violation of the Federal Boiler Inspection Act. It was alleged that as Aly boarded a backing engine the footboard on the tank slipped about an inch and he was thrown forward and from the engine. The first trial resulted in a verdict for the defendant which, upon Aly's appeal, was reversed and remanded. Aly v. Terminal Railroad Ass'n., 336 Mo. 340, 78 S. W. (2d) 851. On the second trial Aly had a verdict of $55,000.00. He refused a remittitur of $25,000.00 and a new trial was granted. On the third trial Aly had a verdict of $85,000.00 which was affirmed on May 8, 1938, after a remittitur of $45,000.00. Aly v. Terminal Railroad Ass'n., 342 Mo. 1116, 119 S. W. (2d) 363—certiorari denied 305 U. S. 655, 59 S. Ct. 251, 83 L. Ed. 424. All of the trials were conducted by Noell. In each of the trials the principal issue was whether there was a defect in the footboard, that is, whether it could and did slip.

On January 13, 1939, Aly shot and killed himself, after writing four letters, one to his lawyer, one to a brother and two to employees of the Terminal, in which he said "your Co. does not owe me any thing on my case as it was faked fixed and ▇▇▇ framed." Upon the Terminal's application the mandate in the principal case was stayed and the Terminal instituted a suit against Aly's executor, Schmidt, and his attorney, Noell, to enjoin the collection of the affirmed judgment alleging that it had been obtained by fraud. The trial court found that Aly wrote the letters and killed himself out of fear and hatred of his wife and with the purpose of destroying the judgment so that she would never enjoy any part of it. That judgment against the Terminal was affirmed in 1942. Terminal Railroad

Ass'n. v. Schmidt, 349 Mo. 890, 163 S. W. (2d) 772. The damages involved in this appeal were assessed upon the Terminal's bond in that suit.

The damages assessed consist of two items, $6371.48 on behalf of Noell and $8407.29 on behalf of Schmidt. $4500.00 of Noell's allowance was for his counsel's fee in defending and representing him in the injunction suit, $94.91 was for expenses, $526.57 was for interest and $1250.00 was for the expert medical fees of Dr. Barnes. The Terminal contends that Noell is not entitled to an allowance for fees and expenses incurred by him in opposing the issuance of the injunction. The basis of its contention is that during the pendency of the Aly case (that is after it was tried the last time, January 8th to the 10th, 1936, and before it was appealed) Noell was suspended from the practice of law for the period of two years and until the costs of the proceeding against him were paid—which was from June 30, 1936, to April 4, 1940. In re Noell, 234 Mo. App. 1162, 96 S. W. (2d) 213. Furthermore, during the time of the Aly case Noell had represented Kimmie who discharged him and employed other counsel after he was suspended and after there had been two trials and two appeals. Kimmie v. Terminal Railroad Ass'n., 334 Mo. 596, 66 S. W. (2d) 561; Kimmie v. Terminal Railroad Ass'n., 337 Mo. 1245, 88 S. W. (2d) 884. The Terminal then settled Kimmie's case and a consent judgment was entered and $15,000.00 was paid into court in order that it might be determined whether Noell was entitled to a fee. On February 8, 1939, eighteen days after the injunction suit was filed, it was held that Noell was not entitled to a fee, either on his contract or for the reasonable value of his services in the Kimmie case. The analogy of a lawyer's voluntarily abandoning his client and his cause was applied to his suspension for misconduct and it was held that Noell could not continue to represent Kimmie and, therefore, could not recover for his services. Kimmie v. Terminal Railroad Ass'n., 344 Mo. 412, 126 S. W. (2d) 1197; Annotation 45 A. L. R. 1135. Because of these facts, the suspension and the Kimmie case, it is urged that Noell did not and could not have any further interest in the Aly judgment, could not have a fee from Aly and could not be injured by the injunction suit and, therefore, is not entitled to damages on the injunction bond. It is said that Noell should have disclaimed any interest in the Aly judgment and thereby minimized the damages on the injunction bond.

In all the cases upon which the Terminal relies, including the Kimmie case, the suspended lawyer had not been paid and he or someone on his behalf sought to enforce his claim for fees by suing on his contract or in quantum meruit and in each case it was held that he had forfeited any and all right to compensation by his own voluntary misconduct. Eagan v. Waggoner, 41 S. D. 239, 170 N. W. 142; Davenport v. Waggoner, 49 S. D. 592, 207 N. W. 972, 45

A. L. R. 1126; In re Woodworth, 85 F. (2d) 50; Fletcher v. Krise, 120 F. (2d) 809. But in this case the facts are that Aly did not discharge Noell or employ other counsel. Noell successfully tried Aly's case and after he was suspended, and with Aly's written permission, Noell employed and paid Judge William H. Allen to represent Aly in this court on the appeal. When the injunction suit was affirmed the Terminal paid in excess of $55,000.00 in satisfaction of the judgment and Noell's name was included in its check of payment. The executor of Aly's estate paid Noell a fee of more than $18,000.00, one-third of the sum recovered. The Probate Court of St. Francois County, in which Aly's estate was in process of administration, approved the payment of the fee upon the application of the executor and no one ever directly questioned the payment. Noell's right to a fee in the Aly case was not involved in the Kimmie case. The Kimmie case did not determine or pass upon the propriety of his acceptance of a fee from the Aly judgment. Neither is Noell's right to or the propriety of his acceptance of the fee from the Aly judgment involved in or determinable in this controversy other than collaterally and abstractly. We may determine the "particular instance only when it is presented to the court as prescribed by law." Riggs v. Moise, 344 Mo. 177, 183, 128 S. W. (2d) 632, ▆▆▆ 635; State ex rel. McManus v. Muench, 217 Mo. 124, 117 S. W. 25.

It is said that the action of the Terminal in making Noell a party to the injunction suit could not nullify his suspension or revive his right to a fee or estop it from contending that he did not have a right to defend the injunction suit. But even assuming that Noell was not entitled, by reason of his suspension and the Kimmie case, to a fee from the Aly judgment it does not follow that he was not entitled to defend the injunction suit nor that he was not and could not be damaged by its unsuccessful prosecution. The Terminal instituted the injunction suit eighteen days before the Kimmie case was decided in this court. Noell's right to and the propriety of his acceptance of a fee by reason of his suspension was not an issue even in that cause. The Terminal sought to enjoin the collection of Aly's judgment on the ground that it had been procured by fraud. The charge was that the principal case had been "fixed faked and framed." The Terminal made Aly's executor, Schmidt, and Noell parties defendant to the injunction suit. An examination of the record and briefs in the injunction suit (which we judicially notice, Bushman v. Barlow, 321 Mo. 1052, 15 S. W. (2d) 329) reveals that the charge was that Aly knowingly and falsely testified that the footboard moved or shifted. It was charged and one of the Terminal's counsel testified that Noell told him that "if I ever have another case involving a footboard, it will never move sideways." From this testimony and Aly's letters that the case was "fixed faked and framed" it was argued that "the court must find that a concoction and fabrication of the

case obtained." In short it was the position of the Terminal, in the injunction proceeding, that Noell was a party to and participated in the alleged fraudulent procurement of Aly's judgment. It is our view, aside from any principles of estoppel against the Terminal and aside from any pecuniary interest Noell may have had in Aly's judgment, that it was not only his right but his duty to defend against the imputation that he as a lawyer participated in the procurement of a judgment by fraud. It is even doubtful that the appellant should now be permitted to question whether Noell was a proper, necessary or injured party to or by the injunction suit since it voluntarily made him a party and it has been decided that it had no right to the injunction. Andrews v. Glenville Woolen Co., 50 N. Y. 282; Bensieck v. Cook, 110 Mo. 173, 19 S. W. 642. The allowance of damages upon the dissolution of an injunction is based upon the fact that the defendant has been compelled to employ aid and incur expense "in ridding himself of an unjust restriction, which has been placed upon him by the action of the plaintiff." 2 High, Injunctions, Sec. 1688; Farasy v. Hindert (Mo. App.), 110 S. W. (2d) 785. Then too had he not defended he might have become liable for costs had judgment gone against him and that would be some justification for defending the action. Cooper v. Hames, 93 Ala. 280, 9 So. 341; Rosser v. Timberlake, 78 Ala. 162.

It is said that under the doctrine of avoidable consequences the duty rested upon Noell, immediately after notice from the Kimmie case that he was not entitled to a fee, to disclaim any interest in the subject matter of the injunction suit and thereby minimize the damages. What we have just said disposes of this contention. But even so, should he? Had he disclaimed any pecuniary interest in the judgment what would have become of the charge of his having participated in fraudulently procuring it? The appellant says that had he disclaimed the cause would not have proceeded against him. But it is just as reasonable, by the same token and for the same reasons to say that had the appellant dismissed its cause as to him he would have disclaimed any interest in the judgment. At least its action in so doing would have tended to minimize the damages.

As to the damages assessed it is urged that they are exorbitant and unreasonable, that they do not conform to the standards enunciated by the law to be used in determining the amount of fees and that the weight of the evidence does not support the allowances. It is urged that some of the fees were unnecessarily incurred and for that reason are not allowable as damages. There can be no doubt but that an attorney is only entitled to fees which are fair and just and which adequately compensate him for his services. The fees allowed must be just to the lawyer and just to his client and in this type of a proceeding exorbitant and unreasonable allowances cannot be approved. Scheufler v. Continental Life Ins. Co., 350 Mo. 886,

169 S. W. (2d) 359; 2 High, Injunctions, Sec. 1688; 32 C. J., Sec. 825, p. 478. But some consideration of the nature of the proceeding before us disposes of most of the appellant's objections. A proceeding for the assessment of damages on an injunction bond "is in the nature of a new, separate and independent controversy." Stine v. Southwest Bank of St. Louis (Mo. App.), 98 S. W. (2d) 539; Laumeier v. Sammelmann, 218 Mo. App. 468, 279 S. W. 249. It is triable, under the statute, by a jury. When a jury is waived, as it was in this instance, the right to damages and their amount is tried by the court. Mo., R. S. A., Sec. 1673; Quinlivan v. English, 44 Mo. 46. No declarations of law were requested or given and the court's award on conflicting, or in some instances uncontradicted, evidence cannot be disturbed by us. Farasy v. Hindert, supra; Richards v. Earl, 345 Mo. 260, 133 S. W. (2d) 381; Laughlin v. Boatmen's National Bank of St. Louis (Mo.), 163 S. W. (2d) 761.

For example, on behalf of Noell, the court allowed Dr. Barnes $1250.00 as a medical expert. One of the questions involved in the injunction suit was Aly's sanity. Mr. Hay testified that Dr. Barnes' services were necessary to a proper and adequate defense of the injunction suit. Dr. Barnes examined the records in the previous Aly cases, he conferred with and advised the attorneys, attended the hearings and testified in the injunction suit. In this proceeding he testified that his services were reasonably worth $2081.51. There is no evidence in this record that Dr. Barnes' services were not necessary. There was no evidence, other than that of Dr. Barnes, as to the value of his services and we cannot arbitrarily say that the allowance to him was unreasonable.

Mr. Hay was employed by and represented Noell in the injunction suit. Noell agreed to pay him a reasonable fee. He familiarized himself with the previous Aly cases and conferred with Noell, frequently. He made trips to Blackwell and investigated the circumstances of Aly's death. He conferred with Edgar and Matthes at DeSoto, one of Schmidt's firms of lawyers. He conferred with Dr. Barnes, with Mrs. Aly's lawyers. He prepared Noell's answer and prepared himself for the trial. The injunction suit was tried over a period of about seven days. So far as Mr. Hay was concerned the case involved Noell's standing and status as a lawyer as well as saving the judgment. Mr. Hay cross-examined most of the witnesses. Four eminent lawyers appeared for the Terminal, Mr. T. M. Pierce, Judge Walter N. Davis, Mr. Arnot L. Sheppard and Mr. Wm. A. Thie. The case was "hotly" contested. Mr. Hay briefed and argued the case for Noell and argued it a second time on re-hearing. Even the argument in this court was bitter and acrimonious. Mr. Hay says he spent a total of thirty days on the case and was reasonably entitled to a fee of $5000.00. Testifying for Mr. Hay, Mr. Eagleton thought $5000.00 most reasonable. Judge Fred L. Williams thought $3750.00,

exclusive of something for defending the character of a lawyer, a proper sum. The court allowed for his services, $4500.00.

Schmidt, Aly's executor, employed Edgar and Matthes of DeSoto and Judge James T. Blair and Mr. Harvey Cox of St. Louis to represent him. Senator Matthes was employed the day Schmidt was ordered to show cause. He consulted with Mr. Hay, reviewed the original cases, prepared and filed the original return, attended the taking of depositions in DeSoto, attended parts of the hearings, made seven trips to St. Louis and devoted ten full days to the case. He thought $1500.00 to $1800.00 a reasonable fee for the services of Edgar and himself. Mr. Wilbur Schwartz thought $1500.00 reasonable for their services. The court allowed them $1200.00. Mr. Harvey Cox and Judge Blair detailed the nature of their services. In addition to studying the records in the previous Aly cases, conferring with lawyers and others and preparing the case for trial they investigated the $2000.00 bond the Terminal had filed and after a hearing got the bond raised to $60,000.00 and a new surety. They prepared a new return for Schmidt. They took part in and attended the trial. In minute detail Judge Blair narrated the work he had done in briefing the case and preparing it for trial. He spent two hundred ninety-nine hours on the case. Mr. Cox and Judge Blair thought they were reasonably entitled to $7500.00. Mr. Schwartz and Mr. Duggan thought they were entitled to that sum. The court allowed them $6000.00.

The facts of the nature and extent of the lawyers' services are not disputed by the Terminal. Mr. John J. Marsalek, Mr. Clark M. Clifford and Mr. Forrest Hemker testified as experts, however, that total fees [84] to all the lawyers for all the services in the respective sums of $4000.00, $5500.00 and $5000.00 would be reasonable.

The appellant admits that the respondents' attorneys obtained beneficial results but contends that it was not proper for the court to consider Senator Matthes' seven trips to St. Louis, and the testimony as to the acrimonious atmosphere in which the case was tried and argued. It is said that the total allowances were too disproportionate to the sums involved. The appellant says the lawyers' responsibilities were not great or unusual and that the legal problems involved were not difficult or complicated. The record in the injunction suit of over eight hundred pages, the Terminal's briefs of over one hundred thirty pages and the reports of the various Aly cases would indicate that the case was difficult and complicated, indeed, and the responsibilities grave. But even so, and disregarding the atmosphere in which the case was tried and Senator Matthes' seven trips to St. Louis, we cannot say, in view of the evidence that the allowance of attorneys' fees in the total sum of $11,700.00 and expenses in the total sum of $1497.06 is unreasonable. Farasy v. Hindert, supra. There is no inflexible rule for determining the reasonableness and size of attorneys'

fees (7 C. J. S., Sec. 191, p. 1079), but considering the character and extent of the services in this case, the intricacy, novelty and difficulty of the case, the time consumed, the ability and eminence of counsel employed by all the parties, the amount involved, the magnitude of the cause to the parties and the results obtained (and there is no indication that the trial court considered any other elements) we think the allowances reasonable. Annotations, 143 A. L. R. 672, 725; 9 A. L. R. 237.

It is urged that the interests of Schmidt, the executor, and Noell, the attorney, were identical and, therefore, it was unreasonable and a duplication of services to employ two different groups of attorneys for the two parties and two firms for the executor. It is said that their fees should have been based on the value of their services as a whole and divided among the respective lawyers. It is true, in an injunction proceeding, that a defendant may not employ an unreasonable number of attorneys nor compel the plaintiff to pay for a duplication of services merely because he successfully defended the injunction. 32 C. J., Sec. 825, p. 478; Neiser v. Thomas, 46 Mo. App. 47; Crane v. Village of Roselle, 157 Ill. App. 595. There was some duplication of services in this case. However, each of the groups of lawyers testified that they performed various and different services. But more important in this case is the fact that Noell's interests and the executor's interests were not identical. They were identical in that it was to their mutual advantage to save the judgment. They were the same in that it was charged that the judgment had been procured by fraud. But as we have indicated Noell had a separate and further interest, apart from the judgment itself, in defending his character as a lawyer. Had he followed the appellant's suggestion and disclaimed any interest in the case or had the executor become antagonistic their interests might have conflicted. It is possible for each of the defendants in an injunction suit to suffer injuries different in nature and degree. C. H. Albers Commission Co. v. Spencer, 236 Mo. 608, 139 S. W. 321. Whether more lawyers than were reasonably necessary had been employed was considered by the trial court and we cannot say that its view of the matter was wholly unreasonable. Neiser v. Thomas, supra; 32 C. J., Sec. 825; 2 High, Injunctions, Sec. 1688.

On the day the injunction was issued, January 21, 1939, accumulated interest in the sum of $7,293.24 was due on the $40,000.00 judgment. In assessing damages the court allowed not only interest on the principal sum but interest on the accumulated interest from the date of the injunction in the sum of $1579.71. It is urged by the appellant that this is an allowance of interest on interest, or compound interest, and never allowable as damages. 1 Sedgwick, Damages, Sec. 345. But obviously the accumulated interest was a sum due the day the injunction was issued. And when the effect of the

injunction is to unjustly deprive the party enjoined of the use of money which belongs to him "interest thereon at the legal rate, for the time the money is impounded, may be recovered by way of damages." 28 Am. Jur., Sec. 351; C. H. Albers Com'n Co. v. Spencer, supra. When the collection of a judgment has been enjoined "in estimating *damages* after the dissolution of an injunction against a judgment, they *should be computed upon the aggregate* ██ *amount of principal, interest* and costs *due at the time the injunction took effect.*" 2 High, Injunctions, Sec. 1666, p. 1617.

██ Mo., R. S. A., Sec. 1673, provides that "upon the dissolution of an injunction . . . damages shall be assessed . . . but if money, or any proceedings for the collection of any money or demand, shall have been enjoined, the damages thereon shall not exceed ten per cent on the amount released by the dissolution, exclusive of legal interest and costs." It is urged that the allowances in this case, being in excess of ten per cent of the $40,000.00 judgment, violate the provisions of this statute. The appellant contends that the language of the statute is plain and unambiguous and means exactly what it says. It is conceded that Wabash Railroad Co. v. McCabe, 118 Mo. 640, 24 S. W. 217, holds that a successful defendant in an injunction suit may suffer injuries and recover damages other than and in addition to the injury and damage of not being able to collect and use the money or demand justly due. But it is urged that the statute is plain and the case distinguishable. There the defendant and his attorney were restrained from collecting a judgment of $15.70. The injunction was dissolved and on motion for damages $25.00 was allowed as an attorney's fee. The appellant relied on the statute. The court said, 118 Mo. l. c. 645:

"When the collection of money under execution is restrained there is nothing to depreciate in value, and for that reason the law fixes the measure of damages at ten per cent on the amount released, so that the damages in that regard may be ascertained by some certain and definite rule, and thereby made easy of ascertainment; there is nothing else to which damages can attach in such case, especially before levy on property. Certainly it was never intended by the legislature that the same rule should not apply in both cases with respect of damages sustained for necessary expenses and attorney's fees in and about defending the suit of injunction."

In short, the statute does not by its terms limit the damages recoverable on an injunction bond to ten per cent of the sum impounded. If other injuries and losses are sustained, such as being compelled to employ counsel, they are recoverable. 4 Houts, Pleading & Practice, Sec. 1033, pp. 190-191.

██ The appellant's tenth assignment in its motion for a new trial was that "the grossly excessive amounts allowed for attorneys' fees and expenses show clearly a purpose on the part of the court to punish

plaintiff rather than to compensate the defendants." The trial court was of the view that this assignment was "impertinent" in the sense that it indicated and meant that the court had wilfully departed from its duty and struck the assignment from the motion. The appellant contends that "impertinent" means, in equity parlance, "surplusage" or "not pertinent" and that there was not such an affront to the court as is connoted by the term "scandalous" and, therefore, the court was in error in striking the assignment. Other than that it is not pointed out how or wherein it was error or how the appellant is prejudiced by it except its repeated argument that the allowances were grossly excessive. What we have said indicates that the allowances were all reasonable and proper and we see no occasion for considering the matter further.

The judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court All the judges concur.